247 So.2d 517 (1971)
GREENHUT CONSTRUCTION COMPANY, INC., a Florida Corporation, Appellant,
v.
HENRY A. KNOTT, INC., Reubin O'd. Askew, Governor of the State of Florida, Richard B. Stone, Secretary of State of the State of Florida, Robert L. Shevin, Attorney General of the State of Florida, Floyd T. Christian, Commissioner of Education of the State of Florida, Doyle E. Conner, Commissioner of Agriculture of the State of Florida, Fred O. Dickinson, Jr., Comptroller of the State of Florida, and Thomas D. O'Malley, Jr., Treasurer of the State of Florida, As and Constituting the Head of the Department of General Services, an Agency of the State of Florida, Appellees.
No. P-108.
District Court of Appeal of Florida, First District.
April 22, 1971.
*518 Holsberry, Emmanuel, Sheppard, Mitchell & Condon, Pensacola, for appellant.
Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellee Henry A. Knott, Inc.
Robert L. Shevin, Atty. Gen., Arthur C. Canady, Asst. Atty. Gen., and Arnold Greenfield, Gen. Counsel, Tallahassee, for appellee Dept. of General Services.
WIGGINTON, Judge.
Defendant intervenor has appealed a declaratory judgment by which the trial court construed pertinent provisions of F.S. chapter 468, F.S.A., relating to the licensing of the construction industry. By the terms of the judgment the Department of General Services, an agency of the State of Florida, was enjoined from refusing to *519 consider or from rejecting the bid of the plaintiff, Henry A. Knott, Inc., for the construction of legislative buildings in the Florida Capitol Center at Tallahassee solely because of Knott's status with reference to registration and certification of it by the Construction Industry Licensing Board of Florida.
This suit was instituted by Knott, a non-resident building contractor, in which only the Department of General Services of the State of Florida was made a party defendant. Greenhut Construction Company moved the court for permission to intervene as a party defendant because of its interest in the outcome of the case. Greenhut's motion was granted, and it became a party defendant pursuant to the provisions of Rule 1.230, R.C.P., 30 F.S.A.; its intervention was in subordination to and in recognition of the propriety of the main proceedings.
The undisputed facts are that in response to an invitation to bidders issued by General Services, a number of contractors, including Knott and Greenhut, submitted bids for construction of two legislative office buildings to be built in the Capitol Center. At the opening of the bids it was found that Knott's bid for the entire project was low by some $2,000 under the bid submitted by Greenhut, each of which bids approximated the sum of $10,000,000. At that point Knott's qualification as a bidder was challenged on the ground that it was not a registered and certified contractor as required by the laws of Florida as a condition precedent to bidding on public works. General Services requested an opinion from the Attorney General of Florida as to whether the law required a bidder to be a registered and certified contractor as a prequalification for bidding on a public project to be constructed by the state. In the opinion rendered by him, the Attorney General advised that the law of this state required contractors to be duly registered and certified by the Florida Construction Industry Licensing Board in order to be qualified to submit a bid for the construction of any public project and that in the absence of such registration and certification a bid submitted by an uncertified contractor should not be considered. On the basis of this advice General Services placed on its agenda for its next succeeding meeting an item for the consideration of Greenhut as the lowest responsible bidder and the award to it of the contract for the construction of the project. It was at this point in time that Knott filed this action in the Circuit Court of Leon County seeking a judicial declaration of its rights under F.S. chapter 468, F.S.A., dealing with the licensing of the construction industry, and a determination as to whether the bid submitted by it was entitled to consideration despite the fact that it did not possess the status of a registered and certified contractor at the time the bid was filed. By the judgment appealed the trial court found in favor of Knott and held that the law did not require it to be registered and certified as a contractor pursuant to the provisions of F.S., chapter 468, F.S.A., at the time it filed its bid. General Services was enjoined from rejecting or refusing to consider the bid solely because of Knott's status as a non-registered and noncertified contractor. The judgment has been appealed only by Greenhut, the State having filed in this cause its election not to appeal.
The first question presented for our decision concerns the motion to dismiss the appeal filed by Knott which is grounded on the proposition that Greenhut, as intervenor, has no legal status to seek appellate review of the judgment complained about. It is Knott's position that only General Services is aggrieved by the injunctive features of the final judgment which is binding on it alone and which cannot be said to adversely affect or prejudice the interest of Greenhut.
It appears to be the established law of this state that subject to the qualification that intervention shall be in subordination to and in recognition of the propriety of the main proceeding, an intervenor is a party *520 for all purposes with the same rights and privileges of other parties to the cause.[1] An intervenor is bound by the court's judgment entered in the cause and may appeal any ruling adverse to him.[2] We are unable to agree with appellee Knott that the judgment sought to be reviewed herein is not adverse to the rights and interests of Greenhut, or that the latter is not prejudiced by virtue of such ruling. Before Knott filed this action in the trial court Greenhut was the apparent low responsible bidder on a $10,000,000 construction project with excellent prospects of being awarded the contract. As a result of the judgment rendered by the trial court, Greenhut is now no longer the lowest bidder, which status is occupied by Knott under the trial court's ruling. If the trial court's judgment is affirmed, Knott's bid will remain the lowest bid offered for the construction of the project and its chances of securing the contract will be good. If the trial court's judgment is reversed, the situation of the parties will be changed; then Greenhut's bid will be low and its prospects of becoming the contractor for construction of the project will again be bright. To say that Greenhut is not aggrieved by the judgment here appealed and its interest not prejudiced thereby is to ignore the realities of the situation. It is our view that Greenhut is an aggrieved party to the cause within the meaning of the applicable appellate rule which provides that: "Any party who shall feel aggrieved by a final decision, order, judgment or decree may take an appeal and all parties to the cause who are not named as parties appellant shall automatically become parties appellee. * *"[3] Appellee Knott's motion to quash or dismiss the appeal is therefore denied.
The primary question to be considered on the merits of the appeal concerns the correctness of the trial court's holding (1) that under the applicable statutes and decisions of this state it was not necessary for Knott to have registered with and been certified by the Florida Construction Industry Licensing Board prior to submitting its bid for the construction of the public project involved in this case and (2) that despite such lack of registration and certification Knott's bid was eligible for consideration by General Services and could not be rejected solely because of Knott's unregistered status as a contractor.
The Legislature of Florida, by the enactment of the statute designated as "Part II. Licensing of Construction Industry",[4] declared it to be the public policy of the state that in order to safeguard the life, health, property, and public welfare of its citizens, the business of construction and home improvement is a matter affecting the public interest, and all persons engaging in the business of contracting should be required to establish their competency and qualifications to be registered or certified as therein provided.[5]
The statute defines a contractor as any person who, for compensation, undertakes to, or submits a bid to, construct any building or structure.[6] The statute further provides that the term "contracting" means engaging in business as a contractor.[7]
From the foregoing statutory definitions it seems eminently clear that any person *521 who submits a bid to construct a building is engaging in business as a contractor. The penal provision of the statute provides:
"It is unlawful for any person to engage in the business or act in the capacity of a contractor without having been duly registered or certified."[8]
A plain and literal construction of the statute compels the conclusion that if one submits a bid agreeing to undertake, for a compensation, to construct an office building, it would be engaging in the business of acting in the capacity of a contractor. If such a bid is submitted before the bidder is duly registered and certified in accordance with the requirements of the statute, it would, in the absence of extenuating circumstances, be guilty of violating the penal provisions of the statute.
The statute sets forth the procedure to be followed by an applicant seeking registration and certification as a contractor by requiring that an application be filed with the board, a fee paid, and an examination taken in which the applicant attains a passing grade of not less than 75%. In addition, as a prerequisite to the issuance of a certificate, the applicant must submit satisfactory evidence that he has obtained the necessary insurance required of contractors in amounts to be determined by the board. Admittedly, none of these steps were taken by Knott prior to the submitting and opening of its bid for the contract to be awarded by General Services in this case.
The instructions to bidders which were issued by General Services and received by Knott and other bidders on the project contained in the following requirement, to wit:
"In order to be qualified a Bidder must be able to present evidence that he is currently registered with or holds an unexpired certificate issued by the Florida Construction Industry Licensing Board in accordance with Chapter 468, Part 2, Licensing of Construction Industry, Florida Statutes 1969."
Such prequalification requirement is recognized as legally permissible,[9] and is in strict conformity with the mandate of the statute. The instructions to bidders also contain the following definition, to wit:
"BIDDER: Any individual, firm, partnership, or corporation submitting a proposal for the work contemplated."
The bid form furnished by General Services to all prospective bidders contained a blank space in which the bidder was required to record the serial number of the license issued to him by the licensing board.
From the foregoing provisions contained in the instructions to bidders and the bid form, Knott was clearly placed on notice, as were all other prospective bidders, that in order for it to be qualified to submit a bid on the work contemplated, it was necessary that it be currently registered with and hold an unexpired certificate issued by the Florida Construction Industry Licensing Board. Such registration was required to have been effective at the time the bid was filed, and not at some later time. Admittedly, Knott failed to comply with the foregoing provisions of the instructions when it submitted its bid without being currently registered with the licensing board. Since Knott did not meet the mandatory requirements of the statute regarding registration and certification nor comply with the prequalification requirements set forth in the instructions to bidders, the bid submitted by it was in violation of the act and was not qualified for consideration by General Services in determining the lowest responsible bid received for the work.
*522 From the recorded explanation made by the trial court at the conclusion of the trial of the reasons underlying the ruling which he was about to make, it appears that much reliance was placed upon that provision of the statute dealing with its general application and in which the following subsection is found:
"Section 468.113 Application of part II

* * * * * *
"(10) This part applies to any contractor performing work for the state, county or any municipality. They are required to determine compliance with this part before giving a commencement order on any of its contracts for construction, improvement, remodeling or repair."
The trial court construed the foregoing quoted provision of the statute to mean that the general requirements of the statute were applicable to contractors performing work for public bodies such as the state, county, or any municipality, but only to the extent that such contractors must be registered and certified before an order to commence work under its contract with the public body is issued. Stated differently, it appears that the trial court construed this provision to mean that in contracting with the state, counties, or municipalities for the construction of public projects, it is not necessary that a contractor be registered and certified with the licensing board at the time he submits his bid, such registration and certificate being required only prior to the issuance by the public body of an order to commence work under the contract after it has been executed by the parties. Based upon this construction of the statute the trial court was of the view, and so held, that Knott's failure to be fully registered and certified at the time it filed its bid for the contract involved in this action was immaterial, and that such failure was not a valid ground for rejecting or refusing to consider the bid. The evidence reveals that after the bids were opened, reviewed, and the results announced, Knott subsequently took the examination offered by the licensing board and received a proper certificate to engage in the contracting business in Florida. It was the trial court's construction of the statute that so long as Knott is a duly registered and certified contractor at the time it receives an order to commence work under any contract which may be awarded to it by the state, an award of the contract under the bid submitted by it would be in conformity with the statute and legal in all respects.
We are unable to agree with the construction placed on this provision of the statute by the trial court. It seems evident to us that the Legislature intended that all of the provisions of Part II apply with equal force to contractors performing work for the state, county or municipality, as apply to contractors performing work for private parties. This being so, the burden rests upon such contractors to become duly registered and certified before engaging in the contracting business by submitting bids to construct buildings and other improvements. If the contractor engages in the contracting business without registration and certification, he is subject to the penal provisions of the statute. The provision on which the trial court relied places a burden on the public body to make sure that the person with whom it has contracted to perform construction work has fully complied with the requirements of the statute before issuing its order to commence work. This is a reasonable provision which allows for an adequate investigation of the low bidder's compliance with the registration requirements of the statute during the necessary time lag between the date on which bids are received, opened, and the lowest responsible bidder determined, and the time when the contract is actually executed and the order to commence work is issued. We do not construe this provision of the statute to relieve a contractor from complying with the certification requirements specified therein until after its bid has been accepted, it has *523 been awarded the contract, and an order for commencement of work under the contract is ready for issuance. Such a construction would in our judgment do violence to the general plan and scheme of the statute and more often than not result in confusion, loss of valuable time, useless expense and increased costs of the project. Furthermore, such construction would permit a contractor to submit a bid to perform work for the state, a county or city, before he is registered and certified, but would penalize him for violating the statute if, before certification, he submits a bid to perform similar work for a private interest. It is our duty to adopt that construction which will harmonize and reconcile the several provisions of a statutory enactment so as to provide a reasonable field of operation that will preserve the force and effect of each.[10]
The evidence adduced before the trial court established that some months prior to submitting its bid for the contract involved in this case, Knott applied for and received from the Florida Construction Industry Licensing Board a limited or restricted registration as a contractor to build a building in Tallahassee. The single purpose license obtained by Knott was pursuant to that provision of the statute which is as follows:
"The Board may receive an application on prescribed forms with supporting data; and upon finding of fact supporting the need or justification, the Board may grant a limited and restricted registration to a contractor not domiciled in the State of Florida for one project. Renewal application or registration cannot be granted. During such registration the Board shall have complete authority to require compliance with this and other Statutes of the State of Florida."[11]
It is not contended that such temporary license was sufficient to qualify Knott as a duly registered and certified contractor for the purpose of bidding on the legislative building contract involved herein. It was while this temporary license was in effect, however, that Knott applied to take the examination offered by the licensing board to become a duly registered and certified contractor qualified to engage in the contracting business in Florida. It was while this application was pending, but before the examination by the board was given, that Knott decided to prepare and submit the bid which is the subject of this controversy. While in the process of preparing its bid, Knott's representative contacted the chief of the bureau of construction of General Services, advising that, although it had only a single purpose temporary permit to build one building in Florida, it was duly qualified as a contractor in other states and expected to take and pass the examination to become a certified contractor in Florida at an early date. In light of these circumstances Knott's representative inquired as to whether the bureau chief had any idea whether it would be satisfactory for Knott to submit a bid for construction of the legislative office buildings. The bureau chief with whom Knott's representative discussed the matter indicated that he thought it would be satisfactory for Knott to submit its bid for the work; that he would discuss the matter further with the engineer who prepared the bid; and that if any contrary opinion was reached, he would so advise him. No further communication was had between Knott and General Services regarding the former's qualification as a bidder until after the bids were opened and the results declared. The trial judge, in his explanatory colloquy with counsel, indicated that because of the circumstances shown by the record General Services should be estopped from asserting Knott's disqualification as a bidder because of the understanding the latter received from the chief of the bureau of construction that it would be satisfactory for Knott to submit a bid *524 on the project. With such conclusion we are unable to agree.
The law of this state generally recognizes the proposition that although the sovereign may under certain circumstances be estopped, such circumstances must be exceptional and must include some positive act on the part of some officer of the state upon which the aggrieved party had a right to rely and did rely to its detriment. Under no circumstances may the state be estopped by the unauthorized acts or representations of its officers.[12] In addition, the essential elements of estoppel are as declared by this court in Quality Shell Homes & Supply v. Roley[13] to be as follows:
"* * * `(1) a representation by the party estopped to the party claiming the estoppel as to some material fact, which representation is contrary to the condition of affairs later asserted by the estopped party; (2) a reliance upon this representation by the party claiming the estoppel; and (3) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon.'"
It is obvious that the circumstances of this case do not bring it within the rule relating to estoppel. In the first place the question about which Knott's representative made inquiry to the bureau chief of General Services did not involve a question of fact but, on the contrary, involved a pure question of law. Whether Knott was qualified under the statute to submit a bid for the construction of the legislative buildings in this case involved a complex question of law. The difficulty of the question is evidenced by the difference of opinion existing between the able trial court and this court as to the proper construction to be given the statute here considered. Knott in effect sought an administrative declaratory judgment from a state functionary who, while eminently qualified in the fields of architecture and engineering, is not shown to possess any of the qualifications necessary to render an authoritative judgment on the legal question posed by Knott, and who certainly is not one on whose opinion Knott had any right to rely. The casual and offhand manner in which the bureau chief indicated that he thought it would be satisfactory for Knott to submit a bid cannot be said to constitute such an affirmative and positive representation of fact as to justify reliance thereon by Knott in determining whether it should submit a bid for construction of the project. Additionally, it is evident that Knott did not rely to its detriment on whatever comfort it took from its conversation with the bureau chief because at that time it was not a qualified bidder under the statute, and it is clearly established that it could not have taken the examination to become a qualified contractor until some time after the bids were scheduled to be received and opened by General Services. There is no showing in the record that Knott changed its position as a result of the verbal assurances it received, nor that it could have done anything to have prevented its disqualification as a bidder between the date of that conversation and the date on which bidding was closed. The holding by the trial court that General Services is estopped from asserting Knott's disqualification as a bidder is therefore rejected.
For the foregoing reasons we have concluded, and so hold, that the construction placed upon part II of the statute relating to the licensing of the construction industry in Florida by the trial court is erroneous. The judgment appealed is reversed and the cause remanded with directions that an appropriate judgment be entered in accordance with the views expressed herein.
JOHNSON, C.J., and SPECTOR, J., concur.
NOTES
[1] 24 Fla.Jur. 199, Parties, § 21.
[2] Wags Transportation System, Inc. v. City of Miami Beach (Fla. 1956) 88 So.2d 751;

Krueger v. Aeme Fruit Co. (1937) 129 Fla. 107, 176 So. 437.
[3] Rule 3.11, subd. a, F.A.R., 32 F.S.A.
[4] F.S. §§ 468.101-468.114, F.S.A.
[5] F.S. § 468.101, F.S.A.
[6] F.S. § 468.102(1), F.S.A.

"`Contractor' means, except those herein exempted, any person who, for compensation, undertakes to, or submits a bid to, or does himself or by others, construct, repair, alter, remodel, add to, subtract from, improve any building or structure, including related improvements to real estate for others, or for resale to others, and who is responsible for substantially the entire project; * * *."
[7] F.S. § 468.102(2), F.S.A.
[8] F.S. § 468.111(1), F.S.A.
[9] City of Opa-Locka v. Trustees of Plumbing Ind. Pro. F. (Fla.App. 1966) 193 So.2d 29.
[10] 30 Fla.Jur. 217, Statutes, § 113.
[11] F.S. § 468.105(4), F.S.A.
[12] 12 Fla.Jur. 474-476, Estoppel and Waiver, § 82.
[13] Quality Shell Homes & Supply v. Roley (Fla.App. 1966) 186 So.2d 837, 841.