## INTEGRATED MICROSYSTEMS, INC. v DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, etc., et al.

### Case No. 85-0158

State of Florida, Division of Administrative Hearings

March 15, 1985

### APPEARANCES OF COUNSEL

**Gary R. Rutledge, Sparber, Shevin, Shapo & Heilbronner, P.A.,** for petitioner.

**Judson M. Chapman** and **Paul A. Rowell,** Department of Highway Safety and Motor Vehicles, for respondent.

**W. Douglas Smith,** Office of General Counsel, Honeywell Information Systems, Inc., for respondent, Honeywell Information Systems, Inc.

### OPINION

WILLIAM J. KENDRICK, Hearing Officer.

## RECOMMENDED ORDER

Pursuant to notice, the Division of Administrative Hearings, by its duly designated Hearing Officer, William J. Kendrick, held a public hearing in the above-styled case on February 25-26, 1985, at Tallahassee, Florida.

## PRELIMINARY STATEMENT

These proceedings arose as a result of a Request for Proposals (RFP) issued by Respondent, Department of Highway Safety and Motor Vehicles (Department), for office automation equipment. The Department recommended that Respondent, Honeywell Information Systems, Inc. (Honeywell) be awarded the contract. Petitioner, Integrated Microsystems, Inc., protested the award alleging that the Department acted arbitrarily and capriciously in rejecting Petitioner's proposal or, alternatively, that the Department should be estopped from raising, as a basis for rejection, any deficiencies which might be present in its proposal. The Department asserts that it acted properly by rejecting Petitioner's proposal, and that the facts do not support an estoppel.

At final hearing the parties offered Joint Exhibits 1-21 and 26-27, and they were received into evidence. Petitioner called William D. Childers, Russell J. Kelly, Randy Walford, James K. Knerr, and Merelyn Grubbs, as witnesses. Petitioner offered Exhibits 1-3, and they were received into evidence. The Department called Randolph Esser III and Glenn Mayne, as witnesses.

Petitioner and the Department have submitted proposed findings of fact and conclusions of law. Honeywell adopted the proposed findings of fact and conclusions of law submitted on behalf of the Department. The parties' proposed findings and conclusions have been reviewed and considered. To the extent the parties' findings of fact were consistent with the greater weight of the evidence, or could be modified to conform to the greater weight of the evidence, they have been adopted in this Recommended Order. To the extent the parties' findings of fact could not be modified to conform to the greater weight of the evidence, or were subordinate, cumulative, immaterial or unnecessary, they have been rejected.

## FINDINGS OF FACT

1. On September 4, 1984, the Department issued its initial Request for Proposal (RFP), RFP No. 2695-84, for office automation equipment to be used in a one-year pilot project at nine locations within the Neil Kirkman Building, Tallahassee, Florida. Under the terms of the RFP the Department had the option, based on the success of the pilot

project and contingent upon future legislative fundings, to expand the system over a four-year period to 254 locations statewide.

2. Pertinent to this case is an understanding of the nature of the Request for Proposal (RFP) procedure. Under Section 287.057(3), Florida Statutes, where, as here, an agency determines that the use of competitive sealed bidding, an Invitation for Bids (IFB), is not practicable, contractual services shall be procured by an RFP. Section 287.057(3) provides:

> A request for proposals which includes a statement of the services sought and all contractual terms and conditions applicable to the procurement of contractual services, including the criteria, which shall include, but need not be limited to, price, to be used in determining acceptability of the proposal shall be issued. . . To assure full understanding of and responsiveness to the solicitation requirements, discussions may be conducted with qualified offerors. The offerors shall be accorded fair and equal treatment prior to the submittal date specified in the request for proposals with respect to any revision of proposals. The award shall be made to the responsible offeror whose proposal is determined in writing to be the most advantageous to the state, taking into consideration the price and the other criteria set forth in the request for proposals. . . .

Whereas consideration of an IFB is controlled by cost, consideration of an offer to an RFP is controlled by technical excellence as well as cost. *System Development Corp. v. Department of Health and Rehabilitative Services*, 423 So.2d 433 (Fla. 1st DCA 1982).

3. Of further import to a resolution of this case, is a provision of the RFP which states:

> The Bidder's Equipment Agreement Form, Licensed Software or Services Form, or any other Form provided by the bidder, shall not be used since the bidder's proposal and the State's acceptance thereof shall constitute the complete agreement. Bids containing terms and conditions conflicting with those contained in this Request For Proposal may be rejected.

4. The foregoing provision of the RFP, as well as Section 287.057(3), Florida Statutes, renders it clear that upon the State's acceptance the bidder's offer establishes the terms of the contract. Consequently, a responsive and unambiguous proposal is imperative under the RFP procedure.

5. The RFP required that vendors submit their sealed technical and cost responses separately. If technically responsive, the vendor's cost

response would be opened and evaluated; if not responsive, the cost response would be returned to the vendor unopened.

6. The RFP granted vendors the opportunity to suggest changes to the RFP and to submit written inquiries. A bidders' conference, held September 26, 1984, was attended by twenty prospective bidders, including Petitioner. Petitioner submitted one written question regarding the bid bond, but submitted no further written inquiries regarding the RFP. The other vendors submitted approximately 160 questions.

7. By Addenda I, dated October 1, 1984, the Department provided its written responses to vendor inquiries, as well as certain changes to the RFP. Three subsequent addenda were also issued. The RFP, and addenda, constitute the bid document. Petitioner acknowledges receipt of all addenda.

8. By October 19, 1984, the deadline established in the RFP, seven proposals and thirty no-bids had been filed with the Department. An evaluation committee consisting of Randolph Esser—chief of the Bureau of Information Services for the Department, and primary drafter of the RFP, Randy Walford—the Department's Systems and Programming Manager, and James K. Knerr—a data processing procurement consultant with the Department of General Services, reviewed the technical proposals of the seven vendors. The committee found the technical proposals of five vendors, including Petitioner, to be nonresponsive. Accordingly, their cost proposals were returned unopened. The technical proposals of two vendors, Honeywell and Mohawk Data Systems (MDS), were found responsive.

9. On October 24, 1984, the cost bids of Honewell and MDS were opened. The committee found the cost proposal of MDS to be nonresponsive. Accordingly, since only one bidder remained, the bid process was terminated.

10. During the committee's review of the technical responses, it used a checklist which had been prepared by Mr. Esser to facilitate the committee's evaluation of the responsiveness of the various proposals. The checklist consisted of a list of bid requirements, according to RFP page number, followed by a "yes" or "no" space to be checked, as appropriate, if the proposal contained, or failed to contain, a particular requirement of the RFP. If the bidder's response was found technically unqualified, a narrative sheet was attached to the checklist explaining any shortcomings the committee had identified at that time. The committee did not purport to undertake an analytical critique of each vendor's proposal. The checklist and narrative sheet were collectively referred to as a "Technical Qualification Summary."

11. Although the committee members considered the checklist an internal working document designed solely to assist them in evaluating the vendor's technical proposals, a copy of the Petitioner's checklist was released by the Department to Petitioner. Petitioner contends it relied on this checklist in preparing its responses to the rebid, and since the deficiencies found in its rebid were not reflected on the checklist for its initial bid, that the Department should be estopped from raising such deficiencies.

12. On October 31, 1984, the Department issued its rebid, RFP No. 2695-84 (Rebid), which is the subject of these proceedings. The rebid documents were identical to those which comprised the initial bid documents with three exceptions. First, the deadline for filing bids was changed to November 19, 1984. Second, the special provision of the RFP which provided for a bidders' conference and the submission of proposed written changes was deleted. General Condition 5, however, which permitted a vendor to submit written inquiries up to ten days before the bids were opened, remained. Finally, accompanying the rebid documents, was a cover letter to the vendors from Merelyn Grubbs, the Department's chief of the Bureau of General Services. That letter, dated October 31, 1984, provided:

Due to failure to receive responsive competitive proposals to this Department's Request For Proposal No. 2695-84 filed October 19, 1984, a rebid is being released. Attached is information reflecting the reasons bidders were found to be nonresponsive.

Bidders are encouraged to carefully examine their proposals submitted in response to the original Request For Proposal and to rectify any oversights within their responses. The Department will not accept changes to the Request For Proposal or contract.

The attachment to Ms. Grubbs' letter consisted of a composite of the narrative sheets prepared by the committee on each technically non-responsive proposal. The checklists were not, however, distributed with the rebid documents.

13. On November 19, 1984, the deadline established in the RFP-Rebid, six proposals and fifteen no-bids had been filed. The evaluation committee, comprised of the same membership as the initial committee, first reviewed the technical proposals of the six vendors. The committee found the technical proposals of four vendors, including Petitioner, to be non-responsive, and their cost proposals were duly returned un-opened. Petitioner's cost proposal was delivered to it on November 30, 1984.

14. On November 21, 1984, the cost proposals of Honeywell and

178

MDS, who were found technically responsive, were opened and each was fully evaluated. Honeywell emerged the apparent successful bidder. On November 29, 1984, after Honeywell had successfully passed a benchmark test for the proposed equipment, the Department posted its recommended award of the bid to Honeywell.

15. On December 3, 1984, Petitioner filed its notice of intent to protest the award to Honeywell. Petitioner's Petition for Formal Hearing was filed with the Department December 12, 1984, and with the Division of Administrative Hearings on January 16, 1985.

16. As part of its technical evaluation of the six rebid vendors, the committee again utilized its "Technical Qualification Summary," which consisted of the checklist and narrative previously described. The rebid evaluation was performed without reference to the initial technical evaluations or bid responses.

17. The initial and rebid RFP required that a proposal include eleven separate tabs, each tab to describe specifically designated aspects of the proposal. Failure to meet any of the mandatory requirements of the RFP subjected the bid to rejection.

18. On the technical evaluation of the initial bid, Petitioner was found non-responsive by the committee as to Tab 5 (Equipment Maintenance), Tab 6 (Application Support), Tab 7 (Training Support), and Tab 9 (Benchmark). The evaluation of Petitioner's rebid found Petitioner non-responsive as to Tab 4 (Licensed Software), Tab 5, Tab 6, Tab 7, and Tab 10 (Manuals).

19. Petitioner's rebid varied from its résponse to the initial bid as to Tabs 5, 6, 7 and 9, with minor changes to Tabs 1, 2 and 3. Petitioner did not alter its response to Tabs 4 and 10.

*Rebid, Tab 4—Description of Licensed Software*

20. Tab 1, Management Summary, was required to contain a brief synopsis of the vendor's proposal. Petitioner's TAB 1 proposal specifically stated:

IMS (Petitioner) believes the proposed configuration, consisting of a megaframe acting as both a shared resource processor and a UNIX System V-based applications processor, provides the DHSMV with the latest in computer technology while offering substantial expansion capability in both memory and processing power.

UNIX is an item of software necessary to operate the UNIX applications processor.

22. Petitioner's president, Russell Kelly, and senior consultant,

**179**

William Childers, testified that the applications processor and UNIX software were only included in the proposal as an option. Therefore, Petitioner argues, Tab 4 was not unresponsive for failing to include UNIX as an item of software.

23. Whatever Petitioner's "intent" may have been, Tab 1 clearly describes the UNIX System V application processor as part of the "proposed configuration," and UNIX is an item of software necessary to operate the application processor.

*Rebid, Tab 5—Equipment Maintenance*

24. The RFP contemplated an ultimate system comprised of 145 "locations" within the Neil Kirkman Building, Tallahassee, Florida, and 100 remote "locations" throughout the State of Florida. Consequently, the RFP required that a vendor's proposal include an agreement to provide on-site maintenance statewide.

25. Petitioner's proposal provided:

IMS will provide, in accordance with the RFP, on-site maintenance at all DHSMV locations for the Host Office Automation equipment, workstations and peripherals.

Petitioner's proposal was found non-responsive because it did not specify on-site maintenance was available for remotely located equipment.

26. The "Host Office" was the Neil Kirkman Building. Therefore, the clear import of Petitioner's proposal was that it would provide on-site maintenance for the proposed 154 "locations"—the automation equipment, workstations and peripherals—to be located in Tallahassee. Petitioner's proposal did not specify on-site maintenance at the proposed 100 remote "locations."

27. Petitioner asserted that its proposal contemplated on-site maintenance at all Department locations statewide. While that may have been Petitioner's intention, the language it selected to convey its proposal limits on-site maintenance to the Neil Kirkman Building.

*Rebid, Tab 6—Application Support*

28. Special Condition of 6 of the RFP, Application Support, required that the:

Bidder shall present and explain the methods and procedures to be employed by the bidder.

"Addenda I" further defined application support to mean:

. . . that any software acquired from the successful bidder and

180

installed as a result of this RFP shall be supported by that bidder regardless of the type of software provided. . . . If third party software is involved, bidder shall be the State's primary contact for problem resolution.

29. Petitioner's proposal provided:

The Department shall be responsible to appoint a coordinator who will instruct the DHSMV remote sites on the unpacking and installation of the NGEN microcomputer, letter quality printer and modem. These personnel should be capable of loading the software at each remote site.

30. Petitioner's Tab 6 was found non-responsive by the Department since it failed to describe any application support. Petitioner sought to avoid the import of its failure to respond to Tab 6 by suggesting that such failure was not material because certain matters of a support nature could be gleaned from other sections of its proposal. While a detailed review of Petitioner's proposal does reveal some items which could be considered application support, Petitioner's response was not in substantial accord with the RFP mandatory requirement that bids be submitted in the Tab format.

*Rebid, Tab 7—Training Support*

31. The RFP, and addenda, required that 12-15 persons be trained. Petitioner's proposal provided:

IMS will provide user training in Tallahassee during the Pilot Project for 12 to 15 people. This training will cover the following aspects of the system:

| | |
|---|---|
| Word Processing | *two 4-hour sessions with 4 persons per session* |
| Multiplan | two 12-hour sessions |
| R: base | two 8-hour sessions |
| Workstation Software Overview | one 16-hour session |
| Workstation Operations | two 2-hour sessions. |

During years 2 through 4 IMS will conduct the above training courses once every four months at a location mutually agreed upon by the State and IMS. Except where indicated differently, sessions will be held for a maximum of 12 people.

Petitioner's proposal was found non-responsive since it failed to agree

181

to provide training support for the required 12-15 persons. Specifically, Petitioner's proposal limited word processing training to 8 persons, not the 12-15 required for the nine workstations/microprocessors to be installed.

*Rebid, Tab 10—Manuals*

32. Special Condition 20 of the RFP required that

The bidder shall list all the Equipment and Licensed Software manuals required.

Petitioner's response did contain a list of all manuals. However, Petitioner also inserted in Tab 10 a three-page "Software Licensing Overview" which, among other things, required a CTIX object code license agreement be signed before UNIX could be delivered. The RFP precluded the signing of any agreements not previously approved by the State. Accordingly, Petitioner's Tab 10 was found technically nonresponsive.

33. Petitioner asserted that Tab 10 was responsive and that the "Software Licensing Overview" was merely supplemental information for the UNIX "option." However, since UNIX was not clearly an "option," the Department was justified in interpreting the additional requirements set forth in the "Software Licensing Overview," as additional terms and conditions, which it was precluded from accepting.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction over the parties to, and the subject matter of, these proceedings.

2. The issues in this case are whether the Department acted arbitrarily and capriciously in rejecting Petitioner's rebid proposal as nonresponsive, or whether the Department should be estopped from raising, as a basis for rejection, any deficiencies in Petitioner's rebid which were not critiqued on Petitioner's initial bid "checklist."

3. The burden is upon Petitioner to establish by a preponderance of the evidence that the Department acted arbitrarily and capriciously in rejecting Petitioner's proposal, or that the Department should be estopped from raising any deficiencies, as a basis for rejection. *Florida Department of Transportation v. JWC Company, Inc.*, 396 So.2d 778 (Fla. 1st DCA 1981).

4. The standard for review of agency decisions for RFP acquisitions and protests was succinctly set forth in *System Development Corp. v.*

*Department of Health and Rehabilitative Services*, 423 So.2d 443, 434 (Fla. 1st DCA 1982).

We are constrained to review the agency's decision under these circumstances only so far as to determine whether the decision was arbitrary, capricious or beyond the scope of its discretion, which discretion is very broad:

'So long as a public agency acts in good faith, even though they may reach a conclusion on facts upon which reasonable men may differ, the courts will not generally interfere with their judgment even though the decision reached may appear to some persons to be erroneous.' *Volume Services Division v. Canteen Corp.*, 369 So.2d 391, 395 (Fla. 2d DCA 1979).

5. Application of the foregoing standards to the facts of this case, compels the conclusion that Petitioner has failed to establish that the Department acted arbitrarily or capriciously. The Department evidenced a good faith exercise of its discretion, and did not act arbitrarily or capriciously in rejecting Petitioner's bid as non-responsive to Tabs 4, 5, 6, 7 and 10; any one of which would have justified a rejection of Petitioner's bid.

6. Petitioner's claim of estoppel is without merit. By the express terms of the RFP the bid documents consisted solely of the RFP and addenda. The "checklist" upon which Petitioner predicates its claim of estoppel was not part of the bid documents. There was no misrepresentation, nor any justifiable reliance. Petitioner, under the express terms of the RFP-Rebid could have inquired of the Department regarding the significance, if any, of the "checklist." Petitioner failed to so inquire. Consequently, any reliance by Petitioner on a document not a part of the RFP-Rebid was unjustified. The record is devoid of the proof necessary to establish the requisite elements of an estoppel. *See Rinker Materials Corp. v. Palmer First National Bank and Trust Co. of Sarasota*, 361 So.2d 156 (Fla. 1978); *Greenhut Const. Co., Inc. v. Harry A. Knott, Inc.*, 247 So.2d 517 (Fla. 1st DCA 1971).

7. At the close of Petitioner's case, the Department moved for an involuntary dismissal of the petition. The Hearing Officer took the Department's motion under advisement and the Department elected to present its case. Consequently, the Department's motion is moot.

Based on the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED that the relief requested by Petitioner, Integrated Microsystems, Inc., be denied, and its petition dismissed with prejudice.