601 So.2d 1300 (1992)
Richard W. OGDEN and Robert M. Larsen, Appellants,
v.
STATE of Florida DEPARTMENT OF TRANSPORTATION, Appellee.
No. 91-1956.
District Court of Appeal of Florida, Third District.
July 7, 1992.
*1301 Kelly, Black, Black Byrne Craig, & Beasley, Joseph W. Beasley and John G. Fletcher, Miami, for appellants.
Fred N. Kellner, Miami, for appellee.
Before HUBBART, BASKIN and GODERICH, JJ.
GODERICH, Judge.
The plaintiffs, Richard W. Ogden and Robert M. Larsen, appeal from a final judgment entered pursuant to a directed verdict granted at the close of the plaintiffs' case. We affirm.
The plaintiffs reached an agreement to purchase the former Tropicaire Drive-In Theatre site (corner of Bird Road and the Palmetto Expressway) for $14,670,000 in order to build a new shopping center. Ogden went through various steps towards the development of the shopping center, including obtaining the necessary rezoning of the property to commercial. Dade County's approval of Ogden's site plan for the shopping center was expressly conditioned upon his obtaining a median cut and stoplight, which would enhance the flow of traffic from Bird Road, from the State of Florida Department of Transportation [DOT].
While preparing to submit an application for a median cut, Ogden's traffic engineers spoke with DOT officials, and at that time they agreed that there would be no difficulty in obtaining the median cut changes. When he contacted DOT at a later date, Ogden was informed that DOT would not look favorably on the median cut changes. Ogden did not submit the median cut application. Thereafter, DOT informed Ogden of proposed improvements in the area and expressed an interest in making an advanced acquisition of the Tropicaire property for the sum of $18,000,000. DOT explained that it would first have to obtain federal and state funding. The plaintiffs contend that they entered into a formal agreement with DOT, which is set forth in various DOT memoranda and documents which DOT provided to the Federal Highway Administration in order to procure the federal funds.
In anticipation of DOT's purchase, Ogden ceased all activities related to the development of the shopping center and advised prospective tenants that DOT was purchasing the property. DOT was unable to obtain the required funds for this project, and informed Ogden that it would not be able to purchase the property.
*1302 The plaintiffs did not close on their purchase and brought this action seeking money damages for the alleged loss of a contractual opportunity to purchase the Tropicaire site and develop a shopping center. The amount requested is the difference between the price DOT would have paid for the land and what the plaintiffs would have paid the actual owners of the property. After the presentation of the plaintiffs' case, the trial court granted DOT's motion for directed verdict finding that the plaintiffs had failed to meet their burden of proof and that the case was lacking in legal substance. The court also reasoned that the agreement was in the planning stage and that there was no intent to enter into a binding agreement until the written agreement was executed. The plaintiffs appeal.
The plaintiffs contend that the trial court erred in directing a verdict in favor of DOT where they presented substantial, competent evidence to establish their case. We disagree.
"[I]t is the duty of the trial court to direct a verdict for the defendant if no evidence is submitted upon which the jury could lawfully find a verdict for the plaintiff." Swilley v. Economy Cab Co. of Jacksonville, 56 So.2d 914, 915 (Fla. 1951); see also Traurig v. Spear, 102 So.2d 165, 170 (Fla. 3d DCA 1958).
The record reveals, as the trial court properly concluded, that there was no written contract or memorandum of any agreement between the parties. The parties were involved in preliminary negotiations. Letters and other memoranda clearly state that the negotiations would be followed by "a legally binding contract spelling out all terms and conditions" prepared by DOT's general counsel. This proposed contract was never prepared nor produced. Moreover, the plaintiffs failed to establish the terms of a viable and binding oral agreement by clear and convincing evidence. See Slomowitz v. Walker, 429 So.2d 797 (Fla. 4th DCA 1983). Consequently, the trial court was entirely correct in disposing of the plaintiffs claims by directed verdict in DOT's favor.
The plaintiffs contend that they detrimentally relied on DOT's promise to purchase the property; they did not develop the site themselves and now have lost the right to purchase the site. We disagree.
Estoppel, especially in cases against the state or its agencies, is a limited cause of action. It has been limited by the courts to those rare circumstances where it will not interfere with the sovereign's exercise of its power. Trustees of Internal Improvement Fund v. Claughton, 86 So.2d 775 (Fla. 1956); see also North Am. Co. v. Green, 120 So.2d 603, 610 (Fla. 1959). In general,
[t]he law of this state generally recognizes the proposition that although the sovereign may under certain circumstances be estopped, such circumstances must be exceptional and must include some positive act on the part of some officer of the state upon which the aggrieved party had a right to rely and did rely to its detriment.
Greenhut Constr. Co. v. Henry A. Knott, Inc., 247 So.2d 517, 524 (Fla. 1st DCA 1971).
No such exceptional circumstances are present in the instant case. In fact, the plaintiff was on notice of at least two possible conditions that could hinder the sale and/or development of the site. First, both sides knew that any eventual contract was contingent upon DOT being able to obtain funding for this project. Secondly, the plaintiffs' whole developmental scheme for the Tropicaire site was contingent on a median cut which DOT had the absolute power to grant or deny. The plaintiffs could not have developed the site without a median cut, even if they had ultimately purchased the land. Therefore, we find that the plaintiffs are precluded from alleging that they detrimentally relied on DOT's promise to purchase the site.
For all of the foregoing reasons, we find that the trial court properly entered a directed verdict in favor of DOT. The judgment entered thereon is hereby affirmed.
Affirmed.