634 So.2d 745 (1994)
MONROE COUNTY, Appellant,
v.
HEMISPHERE EQUITY REALTY, INC., and Texas Largo, Inc., Appellees.
No. 93-2306.
District Court of Appeal of Florida, Third District.
March 29, 1994.
Rehearing Denied May 3, 1994.
*746 Joseph H. Kelinson, Asst. County Atty., Key West, for appellant.
Mattson & Tobin and James S. Mattson, Key Largo, for appellees.
Before BASKIN, JORGENSON and LEVY, JJ.
JORGENSON, Judge.
Monroe County appeals from a final judgment determining the development rights of Hemisphere Equity Realty and Texas Largo, Inc., and enjoining Monroe County from impeding the development. For the following reasons, we reverse.
In 1986, a developer known as Tamarind Cove obtained final development approval for a project in the Upper Keys. Hemisphere Realty acted as Tamarind's agent. When the project was approved, the Monroe County Code required that construction be commenced within one year, and completed within two years of the final approval.[1] In May, 1987, Tamarind's attorney received a letter from the Monroe County Planning Director in response to inquiries about obtaining dock permits; although the letter emphasized the one-year start-up deadline, it did not mention the two-year rule. In November, 1987, Tamarind sold its realty and development rights to Texas Largo; Hemisphere Realty was Texas Largo's local agent. Seven months remained to complete construction within the two-year build-out limitation period. Texas Largo did not seek an extension of the two-year period and did not apply for relief under the new Monroe County Code, which provided that a project "in the pipeline" could, upon application, be granted vested rights to complete the project.
On February 8, 1989, the County's Building Department posted a stop work order, halting construction activity because the original building permit had expired. Five weeks later, an Upper Keys Building Department employee "reissued" a building permit even though the two-year period had expired.
The County attempted to inspect the site at various times, found no work in progress, and observed only one or two poured concrete slabs. When Texas Largo applied in 1990 for a permit to operate a waste sewage treatment facility, the County realized that the development permits had long expired and sent Texas Largo written notice that the major development approval had expired. Texas Largo and Hemisphere filed administrative appeals seeking to reinstate project approval. The Planning Commission denied the relief sought; the Board of County Commissioners approved the Planning Commission's action.
Hemisphere and Texas Largo filed suit in Monroe Circuit Court seeking certiorari review of the County Commission's denial of project reinstatement, and alleging that the County was estopped from enforcing its two-year build-out provision. On the certiorari count, the trial court granted the relief sought by the developer and reinstated the expired development orders. This court granted review and quashed the order of the *747 trial court. "It is apparent that, as a matter of law, the board and the commission correctly decided that the respondents' admitted failure to complete the project within two years after its development plan was approved resulted in the termination of the permit." Monroe County v. Hemisphere Equity Realty, 613 So.2d 550 (Fla. 3d DCA 1993). This court then remanded "for further appropriate proceedings" as to the remaining count  that the County was equitably estopped from enforcing the two-year build-out provision.[2] The trial court, following a bench trial, issued a 22-page order in which it found that Monroe County had a fifteen-year history of not enforcing the two-year build-out rule; that Monroe County had, through Planning Director Pattison's letter to Tamarind's attorney in 1987, not reminded the original developer of the two-year limitation; that Monroe County had issued a second building permit after the two years had expired; and that Monroe County had not inspected the site regularly so as to ensure compliance with the time limitations. The trial court declared that Texas Largo and Hemisphere had acquired vested rights in the development approval, and that Monroe County was equitably estopped from "enforcing ... any ... provision of law to terminate, delay, restrict, or impede the development... ." The trial court further ruled that Texas Largo had three years to complete the development.
The trial court erred in ruling that Monroe County was equitably estopped from enforcing its regulations that established a completion period for major development. The evidence, viewed in a light most favorable to the developer, does not support a finding of estoppel.
Equitable estoppel is to be applied against the state only in rare instances and under exceptional circumstances. To sustain a claim of estoppel against the state or one of its subdivisions, there must be (1) a representation as to some material fact by the party estopped to the party claiming estoppel; (2) reliance upon the representation by the party claiming estoppel; and (3) a change in such party's position caused by his reliance on the representation to his detriment. Furthermore, the act on which the aggrieved party relied must be one on which he had a right to rely.
Calusa Golf, Inc. v. Dade County, 426 So.2d 1165, 1167 (Fla. 3d DCA 1983) (citations omitted). No such rare instance or unusual circumstance exists in this case. Even if the County had been lax in its enforcement of its regulation as against other developers, Texas Largo was not entitled to rely on the County's failure to enforce its regulations against third parties. See Calusa Golf, 426 So.2d at 1167 (stranger to transaction on which alleged estoppel arises cannot rely on representations made to third parties). Furthermore, the act giving rise to the alleged estoppel "must include some positive act on the part of some officer of the state upon which the aggrieved party had a right to rely and did rely to its detriment." Ogden v. State Dept. of Transportation, 601 So.2d 1300, 1302 (Fla. 3d DCA 1992) (emphasis added) (quoting Greenhut Constr. Co. v. Henry A. Knott, Inc., 247 So.2d 517, 524 (Fla. 1st DCA 1971)). Here, the trial court misconstrued the legal doctrine of equitable estoppel when it ruled that Texas Largo was entitled to proceed with its development based upon the County's failure to act against third parties.
The trial court further erred when it found that the Planning Director's 1987 letter to Tamarind, the original developer, was an additional basis for estopping the County from enforcing its regulation against Texas Largo. The letter makes no mention of the two-year rule, and simply describes "the necessary procedures to secure the dock permits."[3] In construing this letter as a basis for estoppel against the County, the trial court opined that the letter omitted any reference to the two-year limitation "because, in 1987, Monroe County had never enforced that provision, even though it had been on the books for 12 *748 years," and that Texas Largo was entitled to rely on the omission of any reference to that regulation. There is no basis in law or fact for the trial court's conclusion. The letter was not written to Texas Largo, but to Tamarind. Texas Largo did not acquire an interest in the property until six months after the letter was written. More importantly, the letter does not, under any conceivable standard, rise to the level of a "positive act" sufficient to create estoppel. Simply put, the letter says nothing, and suggests nothing by omission, regarding the two-year limitation.
The issuance of the second building permit by the Upper Keys Building Department employee was also not sufficient to estop the County from enforcing its two-year build-out ordinance. Generally, estoppel cannot be asserted against a county for an illegally issued permit. Corona Properties of Fla. v. Monroe County, 485 So.2d 1314 (Fla. App. 1986) (citations omitted).
While at first blush it seems that the application of the rule may be harsh, it would be inconceivable that public officials could issue a permit, either inadvertently, through error, or intentionally, by design, which would sanction a violation of an ordinance adopted by the legislative branch of government.
Corona, 485 So.2d 1314 at 1317 (quoting Dade County v. Gayer, 388 So.2d 1292, 1294 (Fla. 3d DCA 1980), rev. denied, 397 So.2d 777 (Fla. 1981)). Texas Largo was thus not entitled to rely upon the second permit, which was erroneously issued long after the two-year period had expired.
Texas Largo did not acquire any "vested" right to extend indefinitely the two-year build-out period. When it purchased the property and development rights from Tamarind, the project was already restricted by the Monroe County ordinance that required projects to be completed within two years of the final development approval. Texas Largo could thus only rely on the code provision that was in effect when Tamarind obtained approval for the project; that approval continued even into the new code, provided the project was completed within two years. In finding that Texas Largo had acquired vested development rights, the trial court erroneously relied upon Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla. 1976). In Hollywood Beach, the Florida Supreme Court held that a property owner had acquired a vested right in continuation of a certain zoning use where, in a politically volatile atmosphere, the City had materially changed the zoning without notice to the landowners. Here, however, there was no zoning change. Texas Largo, having purchased the property and rights from Tamarind, was obligated to abide by the same regulations that bound Tamarind, and to complete the project within two years or seek an extension of time.
In sum, the trial court erred as a matter of law in finding that Monroe County was estopped from enforcing its two-year build-out ordinance. We reverse the final judgment and remand with directions to enter judgment for Monroe County.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Monroe County Code § 6-226(a) (1975) provided that "[c]onstruction of all major development projects shall be initiated within one (1) year and completed within two (2) years after approval of the final development plan unless otherwise specified or approved by the zoning board."
[2] A third count, brought pursuant to 42 U.S.C. § 1983, was dismissed before trial.
[3] The letter indicated that a number of issues needed to be addressed, including approval of a hurricane evacuation plan, an approved landscaping plan, and payment of a fee to the Nature Conservancy to offset elimination of 1.61 acres of hardwood hammock.