663 So.2d 650 (1995)
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
LAW OFFICES OF DONALD W. BELVEAL, Appellee.
No. 94-01366.
District Court of Appeal of Florida, Second District.
September 29, 1995.
Rehearing Denied November 20, 1995.
*651 Robert A. Butterworth, Attorney General, and Louis F. Hubener, Assistant Attorney General, Tallahassee, for Appellant.
J. Ronald Wigginton and Donald W. Belveal, Tampa, for Appellee.
ALTENBERND, Judge.
The Department of Health and Rehabilitative Services (HRS) appeals a judgment awarding the Law Offices of Donald W. Belveal (the Law Office) $430,000 on a theory of promissory estoppel. The trial court essentially extended a written legal services contract between HRS and the Law Offices for an additional year because HRS employees orally promised that the one-year contract would be extended for two additional one-year terms if the Law Office provided adequate service. Despite the Law Office's adequate service, HRS did not renew the contract for the third year. Without passing upon HRS's business ethics in this case, we conclude that the limited theory of promissory estoppel available against the state does not allow the Law Office to enforce this oral promise to extend a contract when the written agreement contains no right of renewal. W.R. Grace and Co. v. Geodata Servs., 547 So.2d 919 (Fla. 1989); Greenhut Constr. Co. v. Henry A. Knott, Inc., 247 So.2d 517 (Fla. 1st DCA 1971). Accordingly, we must reverse and remand for entry of judgment in favor of HRS.
Prior to the summer of 1990, HRS relied upon government-salaried attorneys to represent qualified parents in intrastate child support enforcement proceedings under a federally mandated program. In 1990, HRS decided it would be cost-effective to shift this enforcement program to private law firms. Because HRS did not wish to pay an hourly rate for this service, it sought proposals for contracts based on a flat fee per client.
The Law Office submitted an initial proposal that projected a first-year total cost to HRS of $858,670. This proposal points out that the initial capital outlay and the first two months' operating costs would be $130,000, and that the Law Office would need to obtain financing for these expenses. It also explains that the maintenance fee for each file would be higher in the first year because all start-up costs and capital outlay would be amortized during the first year.
HRS encouraged the Law Office to submit another proposal because the cost was too high. It submitted a new proposal that was similar to the first proposal, except the total annual cost was estimated at $595,833 and the start-up costs were decreased to $75,000.
The Law Office was concerned about its ability to perform this service profitably with only a one-year contract subject to annual competitive bidding. To reduce its costs, the Law Office intended to enter into three-year leases of office space and equipment, and to structure payments on an $80,000 bank loan over a period longer than the proposal's one-year amortization schedule. Although there is some dispute in the evidence concerning the exact assurances given to the Law Office, the testimony uniformly reflects that in 1990 HRS did expect to renew the Law Office's annual contract for two years. HRS personnel advised Mr. Belveal during these negotiations *652 that HRS was aware that a long-term arrangement would be more efficient and that HRS had an informal policy of renewing such contracts for two years if adequate services were provided.
The Law Office relied on HRS's assurances and entered into a one-year contract, effective on August 1, 1990, which capped the annual payment at $595,833. Several clauses of the HRS contract are important to our decision. First, a termination clause provides that either party can terminate at will upon 180 days' notice without cause. Second, a standard clause explains that the written agreement contains the entire agreement between the parties. Third, the agreement contains references to section 287.058, Florida Statutes (1989), and also contains various clauses mandated by chapter 287. It is important that the Law Office never attempted to include a written two-year renewal option in the contract, even though such a clause is expressly permitted by section 287.058(1)(f). The Law Office did not propose any additional language requiring a payment to reimburse its expenses if the contract were not renewed for two years. Thus, the Law Office entered into a contract that it could terminate at will and which contained no written agreement memorializing the assurances given by the various HRS employees.
The parties executed a second annual contract effective August 1991. This contract is comparable to the first contract except the total payments are increased to $650,000. The clause permitting termination at will reduces the notice period to thirty days. Again, there is no evidence that the Law Office attempted to include language providing for a one-year right of renewal.
In March 1992, HRS notified the Law Office that the contract would not be renewed. The August 1991 contract was extended for about a month, but HRS executed a new contract with another law firm in September 1992.
The Law Office filed this lawsuit alleging breach of contract and promissory estoppel. The Law Office did not allege fraud in the inducement. It does not maintain that HRS misrepresented its policy in 1990 concerning renewals. Instead, it maintains that HRS thereafter changed its policy, and the change was either a breach of contract or ineffective under promissory estoppel.
Following a nonjury trial, the circuit court determined that HRS had not breached the written contract, and that an oral contract with the state under these circumstances was not enforceable pursuant to section 287.058(1), Florida Statutes (1989). See Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla. 1984). The Law Office does not challenge this adverse ruling by cross-appeal.
Although the circuit court concluded that HRS's unwritten promise could not be enforced as an oral contract, it ruled that enforcement was authorized under promissory estoppel. It awarded the Law Office lost profits, expenses,[1] and interest, totalling $430,000, for HRS's failure to renew the contract for a third year. HRS appeals this ruling.[2]
The law of this state recognizes that the theory of promissory estoppel applies to the sovereign only under exceptional circumstances. State Dep't of Revenue v. Anderson, 403 So.2d 397, 400 (Fla. 1981); North Am. Co. v. Green, 120 So.2d 603 (Fla. 1959); Lee v. Lang, 140 Fla. 782, 192 So. 490, 493 (1939); Macnamara v. Kissimmee River Valley Sportsmans' Ass'n, 648 So.2d 155, 163 (Fla. 2d DCA 1994); Ogden v. State Dep't of Transp., 601 So.2d 1300, 1302 (Fla. 3d DCA 1983); Calusa Golf Inc. v. Dade County, 426 So.2d 1165, *653 1167 (Fla. 3d DCA 1983); Greenhut Constr., 247 So.2d at 524. There must be clear and convincing evidence of "a positive act on the part of some officer of the state upon which the aggrieved party had a right to rely and did rely to its detriment." Greenhut Constr., 247 So.2d at 524; W.R. Grace, 547 So.2d 919, 925. In this case, the Law Office did rely, to its detriment, on the unwritten word of HRS employees. It had no right, however, to rely upon this oral representation.
The Law Office is presumed to know that an agreement of this magnitude with the state must be in writing. See § 287.058(1), Fla. Stat. (1993). When an agency has express statutory authority to enter into a renewable written agreement on such a major undertaking, there is no need to override the statute of frauds with the uncertainty that inevitably arises from promissory estoppel. Government administrations change, and their policies are often modified or rescinded. The supreme court's 1985 decision in Pan-Am Tobacco, allowing for breach of contract claims against the state on written contracts, makes promissory estoppel more difficult to establish when the promises discussed in negotiation have been reduced to a written contract. 471 So.2d at 5. As a result of these considerations, the right to rely upon an oral promise from a government employee to significantly alter the terms of a written agreement can exist only under circumstances that are truly exceptional. The Law Office's circumstances are certainly unfortunate, but we cannot recognize them as an exception.
Accordingly, we reverse the judgment in favor of the Law Office and remand with directions to enter judgment in favor of HRS.
PARKER, A.C.J., and FULMER, J., concur.
NOTES
[1] The Law Office had entered into three-year leases and other long-term arrangements that could not be terminated when HRS terminated the contract.
[2] For the first time on appeal, HRS argues that promissory estoppel is barred by sovereign immunity. See Southern Roadbuilders, Inc. v. Lee County, 495 So.2d 189 (Fla. 2d DCA 1986), review denied, 504 So.2d 768 (Fla. 1987). But see Champagne-Webber, Inc. v. City of Fort Lauderdale, 519 So.2d 696 (Fla. 4th DCA 1988). There is a considerable body of case law applying promissory estoppel to governmental entities. Some of the limitations on governmental promissory estoppel are similar to concepts of sovereign immunity. In light of our ruling in this case, however, we decline to reach the broader sovereign immunity issue.