106 So.2d 421 (1958)
A.J. SPANGLER, Appellant,
v.
FLORIDA STATE TURNPIKE AUTHORITY, a corporation, Appellee.
Roy ATKINS, Appellant,
v.
FLORIDA STATE TURNPIKE AUTHORITY, a corporation, Appellee.
Jessie P. LOTT, Appellant,
v.
FLORIDA STATE TURNPIKE AUTHORITY, a corporation, Appellee.
Supreme Court of Florida.
October 29, 1958.
Rehearing Denied December 1, 1958.
Leon Levin and George L. Knight, Miami, for appellants.
Brown, Dean, Adams & Fischer, Miami, for appellee.
*422 THORNAL, Justice.
The three appellants, who were plaintiffs below, seek reversal of a final judgment dismissing their complaints in actions for damages resulting from the alleged negligence of the appellee Florida State Turnpike Authority.
We are called upon to determine whether the appellee Turnpike Authority is a state agency and, if so, whether it is subject to liability for damages in tort.
The factual situation is quite simple. The three plaintiffs sued the Turnpike Authority claiming personal injuries and property damage resulting from the alleged negligence of the Turnpike Authority in the maintenance of the Sunshine State Parkway. The Parkway is a toll road constructed over a distance of about 110 miles in South Florida. It was constructed and is now maintained by the appellee Turnpike Authority. It is the usual toll road for the use of which operators of motor vehicles pay tolls.
The appellee filed a motion to dismiss an amended complaint. The motion was sustained and a final judgment was entered dismissing the complaint. Reversal of this judgment is now sought.
The appellants contend that the Turnpike Authority is not a state agency and is, therefore, subject to liability for tortious injuries. In the alternative, they contend that if the Authority is a state agency, its immunity against liability has been waived by statute.
The appellee contends that it is a state agency; that it shares the State's immunity to liability for tort; and that its immunity has not been waived by statute as required by the Florida Constitution.
We encounter no difficulty in arriving at the conclusion that the appellee Turnpike Authority is an agency of the state government. In the first place, Section 340.05(5), Florida Statutes, F.S.A., specifically provides that the Authority is a body corporate and politic, and that it shall be regarded "as performing an essential government function" in the fulfillment of the powers granted by the act creating it. In addition to this specific legislative recognition of the governmental aspects of the appellee Authority, we look also to its powers and duties. It is charged with the responsibility of constructing a toll road facility through the length of the State of Florida. It has already constructed the Turnpike now in question. This road is an important segment of the State Highway System. Although its revenues are derived primarily from tolls charged for the use of the road, these revenues are nonetheless public funds inasmuch as they are devoted entirely to a public purpose, to wit, financing of construction and the continued maintenance and operation of a part of the State Highway System. Members of the Authority are commissioned state officers appointed by the Governor. One of the five members is by law also a member of the State Road Department. He serves the function of a liaison between the two agencies. The Authority has issued and sold securities which enjoy a tax-exempt status the same as any other governmentally issued securities. The Authority exercises the power of eminent domain. In addition to the toll road mentioned the Authority also has the power to use its revenues for the construction of so-called feeder roads, which likewise are a part of the State Highway System.
The sum of all these observations is that the appellee Florida State Turnpike Authority, as correctly ruled by the trial judge, is a state agency. As a state agency, absent a specific waiver, it shares in the sovereign immunity to suit.
By the order dismissing the amended complaint, the trial judge appeared to be of the view that the title to Chapter 28128, Laws of Florida 1953, which created the appellee Turnpike Authority, was not sufficiently definite to comprehend within its scope any provision in the body of the act which could be construed as a waiver of *423 immunity. We think it unnecessary to delve into this aspect of the problem. This is so for the reason that Chapter 28128, supra, was incorporated in the 1955 and 1957 revisions of the Laws of Florida and has become Chapter 340, Florida Statutes, F.S.A. Any defect in the title of the original act as it passed the Legislature has been cured by the inclusion of the act in the revised statutes and the subsequent adoption of the revisions by the Legislature. We have held that under these circumstances this court will not undertake to explore alleged defects in the title to the original act. State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804; Thompson v. Intercounty Tel. & Tel. Co., Fla. 1952, 62 So.2d 16; Rodriguez v. Jones, Fla. 1953, 64 So.2d 278.
Regardless of the reasons assigned by the trial judge we, nonetheless, find that his ultimate conclusion sustaining the motion to dismiss the complaint was correct. We do so for the reason that we find that the State Legislature has not waived the Authority's immunity to liability for damages resulting from an alleged tort.
It is true that in generally defining the powers of the Authority by Section 340.06, Florida Statutes, F.S.A., the Legislature has provided that it has the power "to sue and be sued in its own name". Nevertheless, consistent with our own precedents as well as analogous decisions of other states, we are of the view that this general provision included in the delineation of the Authority's powers is not adequate in and of itself to constitute a waiver of immunity from liability for tort. We have specifically so held with reference to counties. Section 125.01, Florida Statutes, F.S.A., provides that county commissioners shall represent the county "in the prosecution and defense of all legal causes". Section 125.15, Florida Statutes, F.S.A., provides that "The county commissioners of the several counties shall sue and be sued in the name of the county of which they are commissioners." Despite this general language in the legislative statement of the powers of the counties, we have held throughout the years that a county which is a division of the State shares in the State's immunity from liability in tort actions. See Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372.
In similar fashion, despite the fact that the Everglades Drainage District is endowed by statute with the power "to sue and be sued", we have also held that this legislative provision is not sufficient to constitute a waiver of immunity of this state agency from liability for damages in a tort action. Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422. Consistent with these earlier rulings this court has held that a Drainage District organized under the general Drainage District Act, Chapter 298, Florida Statutes, F.S.A., is similarly immune to liability for damages resulting from an alleged tort. Rabin v. Lake Worth Drainage District, Fla. 1955, 82 So.2d 353. Admittedly, this writer disagreed with the majority on this point in the case last cited. However, the controlling precedent was announced by the opinion of the court and supports the conclusion which we herewith reach.
The appellants suggest that we should be influenced by the decisions of the Supreme Court of Kansas in Pennington v. Kansas Turnpike Authority, 180 Kan. 638, 305 P.2d 849; and Anderson Cattle Co. v. Kansas Turnpike Authority, 180 Kan. 749, 308 P.2d 172. It is true that in the cases cited Kansas Turnpike Authority was held responsible for certain damages which resulted during the construction of the Kansas Turnpike. This was done under a specific provision of the act creating the Authority. However, the same court has held that the general power "to sue and be sued", which is included in the Kansas Turnpike act, G.S. 1955 Supp. 68-2001 et seq., as it is in the Florida act, is not adequate to constitute a waiver of the Turnpike Authority immunity from liability for a tort action. State ex rel. Fatzer v. Kansas Turnpike Authority, 176 Kan. 683, 273 P.2d 198. *424 A similar provision included in the act creating the Kansas State Highway Commission was held to be ineffective as a waiver of immunity from tort liability. State ex rel. v. Kansas State Highway Commission, 138 Kan. 913, 28 P.2d 770; Barker v. Hufty Rock Asphalt Co., 136 Kan. 834, 18 P.2d 568.
Article III, Section 22, Florida Constitution, F.S.A., authorizes the Legislature to provide by general law for the bringing of a suit against the State. This, of course, applies in equal measure to all state agencies. Inasmuch as immunity of the state and its agencies is an aspect of sovereignty, the courts have consistently held that statutes purporting to waive the sovereign immunity must be clear and unequivocal. Waiver will not be reached as a product of inference or implication. The so-called "waiver of immunity statutes" are to be strictly construed. This is so for the obvious reason that the immunity of the sovereign is a part of the public policy of the state. It is enforced as a protection of the public against profligate encroachments on the public treasury.
Consistent, therefore, with all of the precedents to which we have been referred and which our own research has produced, we are constrained to hold that the appellee Turnpike Authority enjoys the State's immunity to liability for damages resulting from an alleged tort and that this immunity has not been waived by the Legislature.
In order to forestall any thought that we have overlooked the case of Florida Livestock Board v. Gladden, Fla. 1956, 86 So.2d 812, we mention that we, like the trial judge, have the view that this case is not analogous to the case at bar. In the Livestock Board case we had a situation where the Florida Livestock Board had proceeded pursuant to Chapter 585, Florida Statutes, F.S.A., to destroy certain diseased hogs owned by Gladden. The litigation which appeared before the court was instituted by the state agency itself pursuant to the statute in order to obtain a valuation on the destroyed animals. In other words, the Gladden case was originated by the state agency seeking a judicial determination of the value of private property destroyed in the public interest. It was in no manner a proceding in tort instituted by an individual against a state agency. We were not there confronted with the immunity problem.
We therefore hold that the trial judge ruled correctly in sustaining the motion to dismiss the amended complaint and in entering the judgment accordingly.
The judgment is 
Affirmed.
TERRELL, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.