835 So.2d 1091 (2002)
FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Petitioner,
v.
S.A.P., Respondent.
No. SC00-105.
Supreme Court of Florida.
November 27, 2002.
Rehearing Denied January 8, 2003.
*1093 Richard E. Doran, Attorney General, and Charlie McCoy, Assistant Attorney General, Tallahassee, FL, for Petitioner.
Jay C. Howell of Anderson & Howell, Jacksonville, FL, for Respondent.
Thomas E. Warner, Solicitor General, and T. Kent Wetherell, II, Deputy Solicitor General, Tallahassee, FL, for the State of Florida, Amicus Curiae.
SHAW, J.
We have for review S.A.P. v. State Department of Health & Rehabilitative Services, 704 So.2d 583 (Fla. 1st DCA 1997), wherein the district court certified the following question in an unpublished order:
Can the doctrine of fraudulent concealment apply to toll the statute of limitations in a negligence action?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer as explained herein.

I. FACTS
The facts concerning S.A.P.'s 1995 negligence claim against Florida Department of Health and Rehabilitative Services ("HRS" or the "department") are set forth in the district court decision under review, which provides in relevant part:
S.A.P. appeals a final order which dismissed with prejudice her second amended complaint against appellee, State of Florida Department of Health and Rehabilitative Services (HRS), based on the application of the statute of limitations, section 768.28(12), Florida Statutes (1993). This section provides, with certain exceptions not applicable here, that a claim against the state must be brought within four years after such claim accrues....
. . . .
S.A.P.'s complaint alleges that in 1979, when she was a four year-old child in foster care supervised by HRS, she was subjected to physical injury, including burns, beatings, and malnourishment, due to the negligent failure of HRS to supervise and monitor her foster care placement and to remove her from the care parent. Paragraph 13 of her complaint alleges:
The department, during the plaintiff's minority, actively concealed the facts concerning the negligence that is the basis of this complaint. Any records concerning the negligence complained of were, by Florida Statute and by the active efforts of the defendant, concealed from the public and those involved in the care of the plaintiff. *1094 The defendant department obstructed the law enforcement investigation of the abuse of the plaintiff and her sister in 1979....
. . . .
We conclude that, based on the allegations of the complaint, S.A.P. has sufficiently stated both a cause of action for negligence and the equitable principle of fraudulent concealment.
S.A.P., 704 So.2d at 584-85.
The court held that the four-year limitation in section 768.28(12), Florida Statutes (1993),[1] was "tolled" by HRS's conduct and ordered S.A.P.'s complaint reinstated:
S.A.P. argues, and we agree, that because her complaint sufficiently alleged factual bases for tolling the statute [of limitations], it cannot be said that the defense of the statute of limitations affirmatively appears on the face of the complaint. Accordingly, it was error to dismiss her complaint with prejudice and we reverse.
S.A.P., 704 So.2d at 584. The district court certified the above question.
S.A.P. contends that, in light of HRS's allegedly fraudulent acts and its "active concealment" of those acts, the doctrine of equitable estoppel should bar the department from asserting a statute of limitations defense. "HRS should be barred by equitable estoppel from asserting the defense of the statute of limitations. This prohibition on the ability of HRS to articulate the defense is consistent with this Court's reliance upon the principle that our courts will not protect defendants who are directly responsible for delays of filing because of their own willful acts." We agree.
Because this case is before us on the trial court's dismissal of S.A.P.'s second amended complaint, we must take all the factual allegations in her complaint as true and construe all reasonable inferences from those facts in her favor.[2] Our standard of review is de novo.[3] Several significant dates appear on the face of her complaint: S.A.P.'s abuse was first officially observed in 1979; HRS's internal investigation report documenting the abuse was released on December 21, 1992; S.A.P. reached the age of majority on August 8, 1994; and the present action was filed in January 1995.

II. THE CONSTITUTIONAL AND STATUTORY SCHEMES
The doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its own permission, has been a fundamental tenet of Anglo-American jurisprudence for centuries and is based on the principle that "the King can do no wrong."[4] The doctrine was a part of the English common law when the State of Florida was founded and has been adopted and codified by the Florida Legislature.[5]
Article X, section 13, Florida Constitution, however, provides that the Legislature can abrogate the State's sovereign immunity:

*1095 SECTION 13. Suits against the state.Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.
Art. X, § 13, Fla. Const. Pursuant to this provision, the Legislature enacted section 768.28, Florida Statutes (1973), which at the time the present action was filed in 1995 provided as follows:
768.28 Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; exclusions.
(1) In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or of any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.

§ 768.28, Fla. Stat. (1995) (emphasis added).
One of the key limitations specified in the act is spelled out in section 768.28(13) in the form of a four-year restriction placed on the filing of all tort claims under section 768.28:
(13) Every claim against the state or one of its agencies or subdivisions for damages for a negligent or wrongful act or omission pursuant to this section shall be forever barred unless the civil action is commenced by filing a complaint in the court of appropriate jurisdiction within 4 years after such claim accrues; except that an action for contribution must be commenced within the limitations provided in s. 768.31(4), and an action for damages arising from medical malpractice must be commenced within the limitations for such an action in s. 95.11(4).
§ 768.28(13), Fla. Stat. (1995) (emphasis added). The Court has held that this restriction constitutes a statute of limitations, not a statute of repose.[6]

III. MAJOR LEAGUE BASEBALL v. MORSANI

This Court in Major League Baseball v. Morsani, 790 So.2d 1071 (Fla.2001), addressed the question of whether the tolling proscription in section 95.051 applies to equitable estoppel.[7] There, Major League Baseball alleged that Morsani's tort claim was barred by the statute of limitations *1096 and that Morsani could not assert the doctrine of equitable estoppel because the doctrine was excluded by section 95.051. This Court disagreed, concluded that the doctrines of tolling and equitable estoppel "are as different as apples and oranges," and held that the tolling proscription in section 95.051 is inapplicable to equitable estoppel. In reaching this decision, the Court examined the principles underlying the statutes of limitation and equitable estoppel.

A. Statutes of Limitation

Statutes of limitation, which impose a strict time limit on the filing of legal actions, were nonexistent at common law and instead are a creature of modern statutory law:
At common law, there were no fixed time limits for filing lawsuits. Rather, fixed limitations on actions are predicated on public policy and are a product of modern legislative, rather than judicial, processes. A prime purpose underlying statutes of limitation is to protect defendants from unfair surprise and stale claims:
"As a statute of [limitations], they afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses. Indeed, in such circumstances, the quest for truth might elude even the wisest court."

Nardone v. Reynolds, 333 So.2d 25, 36 (Fla.1976) (quoting Wilkinson v. Harrington, 104 R.I. 224, 243 A.2d 745, 752 (1968)).
Major League Baseball v. Morsani, 790 So.2d 1071, 1074-75 (Fla.2001) (footnotes omitted). Time limitations on legal actions in Florida ordinarily are governed by the statutes of limitation set forth in chapter 95,[8] but as noted above, time limitations on chapter 768 actions are controlled by section 768.28(13).

B. Equitable Estoppel

The preclusive effect of the statutes of limitation can be deflected by various legal theories, including the doctrine of equitable estoppel. The Court described the contours of this doctrine:
The doctrine of equitable estoppel has been a fundamental tenet of Anglo-American jurisprudence for centuries:
"Estoppe," says Lord Coke, "cometh of the French word estoupe, from whence the English word stopped; and it is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead [otherwise]."
Lancelot Feilding Everest, Everest and Strode's Law of Estoppel 1 (3d ed.1923). The doctrine, which was part of the English common law when the State of Florida was founded, was adopted and codified by the Florida Legislature in 1829.
Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position:
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, *1097 either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or of contract or of remedy."
The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.

State ex rel. Watson v. Gray, 48 So.2d 84, 87-88 (Fla.1950) (quoting 3 Pomeroy's Equity Jurisprudence § 804 (5th ed.1941)).
Major League Baseball, 790 So.2d at 1076 (footnote omitted).
Equitable estoppel differs from other legal theories that may operate upon the statutes of limitation in that equitable estoppel presupposes an act of wrongdoingsuch as fraud and concealmentthat prejudices a party's case:
Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct. The doctrine bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct. Equitable estoppel thus functions as a shield, not a sword, and operates against the wrongdoer, not the victim. This Court has applied the doctrine for more than a century and a half.
Major League Baseball, 790 So.2d at 1077.

IV. EQUITABLE ESTOPPEL vs. SECTION 768.28(13)
It is well settled in Florida and other jurisdictions that the statutes of limitation can be deflected by the doctrine of equitable estoppel.[9] This proposition is supported by vast precedent from this Court,[10] Florida district courts of appeal,[11] *1098 and federal courts.[12] HRS asserts that, despite this precedent, the statute of limitations in section 768.28(13) is somehow different from all other statutes of limitation in that it applies only to suits filed against the State as opposed to private persons. We find this claim disingenuous in light of the plain language of section 768.28(1), which provides that the State consents to be sued "in accordance with the general laws of this state" for any tort in which "a private person would be liable to the claimant." This consent, we conclude, evinces an unequivocal intent on the part of the State to abide by the traditional lawsincluding the equitable canons governing tort actions in any claim filed under section 768.28.
This conclusion is borne out by several considerations. First, equitable estoppel is a basic tenet of the common law[13] and any statute enacted in derogation of the common lawsuch as a statute of limitationsmust expressly so provide:
[A]s noted above, equitable estoppel is a deeply rooted, centuries old tenet of the common law. On the other hand, fixed time limitations for filing suit, i.e., statutes of limitation, were unknown at common law and are a creature of modern statute. This Court has held that a statute enacted in derogation of the common law must be strictly construed and that, even where the Legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise:
The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard. Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.

Thornber v. City of Fort Walton Beach, 568 So.2d 914, 918 (Fla.1990).
Major League Baseball, 790 So.2d at 1077-78 (footnote omitted). In the present case, not only does the plain language of section 768.28(13) not expressly change the common law doctrine of equitable estoppel, it does not mention or allude to that doctrine.
And second, the basic purposes served by the statute of limitations and the doctrine of equitable estoppel are in harmony.
[T]he fundamental purposes served by the statute of limitations and the doctrine *1099 of equitable estoppel are congruent. As noted above, a main purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims. A prime purpose of the doctrine of equitable estoppel, on the other hand, is to prevent a party from profiting from his or her wrongdoing. Logic dictates that a defendant cannot be taken by surprise by the late filing of a suit when the defendant's own actions are responsible for the tardiness of the filing.
Major League Baseball, 790 So.2d at 1078 (footnote omitted). In the present case, section 768.28(13) and the doctrine of equitable estoppel work hand in hand to achieve a common goalthe preservation of a viable and fair legal system.

V. S.A.P.'s COMPLAINT
S.A.P. alleged in her complaint that the department was negligent in the following ways: in failing to adequately supervise and monitor the placement of S.A.P.; in failing to adequately supervise the activities of its caseworker, Ms. Dassie; in failing to remove S.A.P. from the home of C.C. when the department knew or should have known that S.A.P. and her sister were being abused by C.C.; and in falsifying and altering records of her foster care in C.C.'s home and in allowing those records to remain in her official file. S.A.P. also alleged that the department "actively concealed the facts concerning the negligence that is the basis of this complaint" and "obstructed the law enforcement investigation of the abuse of the plaintiff and her sister."
S.A.P. stated several specific claims in paragraph 13 of her second amended complaint:
(13) The department, during the plaintiff's minority, actively concealed the facts concerning the negligence that is the basis for this complaint. Any records concerning the negligence complained of were, by Florida Statute and by the active efforts of the defendant concealed from the public and those involved in the care of the plaintiff. The department obstructed the law enforcement investigation of the abuse of the plaintiff and her sister in 1979. In the report of the internal investigation conducted by the Defendant and released on December 21, 1992, it was first revealed that law enforcement officials alleged that employees of the defendant obstructed the criminal investigation of the 1979 abuse and neglect of the plaintiff. The department's own internal investigation, reported on December 21, 1992, also revealed for the first time that the case worker charged with the duty to supervise the placement of the plaintiff and her sister falsified records so that it appeared that the case worker had conducted monthly supervision visits with the plaintiff and her sister. The records reveal that the foster home was frequently visited and that S.A.P. and her sister were doing fine. Had any interested adult examined these records prior to December 21, 1992, they would have been misled into believing that the department had reasonably, appropriately, and lawfully discharged its supervision duties. The negligence of the Department was concealed by these falsified records.
In paragraph of 17 of her complaint, S.A.P. explained that she had no active memory of the abuse until she became a young adult:
(17) Throughout the course of her childhood, the plaintiff had little or no actual memory of the incidents which serve as the subject of this complaint. She was only three and barely four years old at the time of the incidents which serve as the basis for this claim. In addition, the trauma and abuse which she endured caused her to lose any active *1100 memory of the incidents in question. Her loss of memory is confirmed by her treating counselor who, in treatment with the plaintiff from 1992 to 1993 (when the plaintiff was 17 years of age), verified that the plaintiff, at that time, had no active memory of these incidents. Of course, the plaintiff had no memory or knowledge whatsoever concerning the negligence that forms the basis of this complaint and the failure of the department to properly supervise her at age three and four.
Additionally, S.A.P. alleged other acts of wrongdoing by the department, including a claim that "[t]he records of the facts underlying this cause of action ... had been altered."

VI. CONCLUSION
If we, as we must, take the factual allegations in S.A.P.'s second amended complaint as true and construe all reasonable inferences therefrom in her favor, we conclude that the doctrine of equitable estoppel bars HRS from asserting that the complaint was untimely filed. Section 768.28(13) is a conventional statute of limitations, nothing more; it is not a statute of repose that forecloses all forms of equitable relief. The law of this State does not bestow upon the department a special boon to betray the children in its charge, to flagrantly flout the law, to conceal its misdeeds, and then to invoke section 768.28(13) as a shield for its actions.
S.A.P.'s complaint alleged serious acts of sustained, long-term child abuse that the department negligently overlooked in contravention of its supervisory responsibility:
On or about October 20, 1979, the Clay County Sheriff's Office responded to reports from neighbors that they had heard the cries of young children and screaming emanating from a residence. They found S.A.P. and her younger sister, J.M.P., bruised over their entire bodies, burned, beaten, choked, malnourished, and suffering from other injuries at a residence in Orange Park, Florida. At the time of the discovery of the children, S.A.P., then age 4, weighed 22 pounds and was "very emaciated" according to medical records. The children were not residing at the proper foster home location.
The complaint further alleged that, after the abuse was uncovered by police, HRS then "obstructed" the police investigation, "falsified" reports, "altered" records, and otherwise "actively concealed" the abuse. To allow the department to do as alleged i.e., to negligently supervise and monitor S.A.P.'s placement, to conceal the resulting abuse for years, and then to invoke the statute of limitations to escape liability would violate the basic principles underlying chapter 768 and make a mockery of section 768.28(13).
Notably, we do not pass on the factual development of this issue at trial; our review is limited solely to the allegations contained in the complaint. We do not address the question of whether any other considerations may operate to restrict the use of equitable estoppel in this case; nor do we comment on the merits of the underlying cause of action. We answer the certified question narrowly as explained herein, approve the ruling of the district court to the extent it is consistent with this decision, and remand for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and PARIENTE and QUINCE, JJ., concur.
LEWIS, J., concurs specially with an opinion, in which ANSTEAD, C.J., and PARIENTE, J., concur.
*1101 WELLS, J., dissents with an opinion, in which HARDING, Senior Justice, concurs.
HARDING, Senior Justice, dissents with an opinion, in which WELLS, J., concurs.
LEWIS, J., specially concurring.
I concur in the entirety of the majority opinion in the instant case. I write separately, however, to expand upon several concepts of Florida law that become operative under the circumstances we consider today. In my view, the dissenting opinions approach the analysis of sovereign immunity and its relationship with the doctrine of equitable estoppel from a far different perspective. This perspective does not, in my opinion, afford room for consideration or accommodation of several important decisions and concepts applicable here. While I agree with some concepts expressed by the dissenting view, equitable concepts have a life here, as previously recognized by this Court.
As noted by the majority, the sovereign's immunity from civil suit is an age-old common law rule, adopted as the law in this state by inclusion of the principle in the Florida Constitution. See art. X, § 13, Fla. Const. Within the Constitution, however, is a provision which allows the Legislature to abrogate the immunity. See id. As detailed in the majority opinion, the Legislature has chosen to waive sovereign immunity and accept tort liability to the same degree "a private person would be liable." § 768.28, Fla. Stat. (1995). In my view, this statute is extraordinarily clear, and it is important to note that it specifically directsunless explicitly excluded by the language of the statutethat the state is liable in tort as if it were a private party. The fundamental principle here is that the Legislature has in fact waived immunity and today we are not faced with creating or extending immunity. On the contrary, we must carry out our constitutional responsibility to interpret and apply the statutes which have already done so.[14] This is a difference of perspective in approaching resolution of the problem we confront.
Like sovereign immunity, equitable estoppel is also a seasoned common law doctrine. Based upon principles of fair play and essential justice, this doctrine may be applied as a shield against otherwise viable defenses. Most assuredly, equitable estoppel is an age-old doctrine which has been the law in Florida since 1829, and has been applied by this Court for more than a century. See majority op., supra, at 1096-97; Major League Baseball v. Morsani, 790 So.2d 1071, 1076 (Fla.2001). It is triggered when one party "lulls another party into a disadvantageous legal position," particularly when standing in a fiduciary capacity to the complaining party. Morsani, 790 So.2d at 1076. Based upon the principle that one standing in a fiduciary position must disclose all relevant information to the party depending upon him or her, equitable estoppel simply nullifies the effectiveness of an otherwise valid defense because equity deems that result repugnant to justice. Thus, where a party in such position owes another a duty, fails to fulfill that duty, and also does not disclose the breach to his or her charge, the fiduciary is estopped from asserting that the injured party's action is barred by a statute *1102 of limitations. While equitable concepts may have some limitations when arms-length transactions with total strangers are involved, such principles are more expansive when special relationships are presented.
In Florida, it is well settled that a time limitation provision "does not trump the doctrine of equitable estoppel." Morsani, 790 So.2d at 1078. In Morsani, this Court stated that it
has recognized equitable estoppel as a bar to a statute of limitations defense both prior to the passage of the tolling provision in section 95.051 and after passage... Florida's district courts have approved equitable estoppel as a bar to the statute of limitations and federal courts have ruled similarly....
Id. (footnotes omitted). The rationale of the relationship between equitable estoppel and a time-limiting statute is that a defendant cannot be taken by surprise by the late filing of an action when the defendant's own conduct is responsible for the tardiness of the filing. See id.; Baptist Hospital of Miami, Inc. v. Carter, 658 So.2d 560, 563 (Fla. 3d DCA 1995); Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992).
While I agree to a very limited extent with some of the basic elements discussed in the dissent, I have difficulty accepting the expression and discussion of other ideas in such rigid, absolute terms, which are contrary to what I find to be the persuasive authority. I suggest that while the waiver of sovereign immunity is to be strictly construed, the implementing statute must also be considered and applied in light of the manifest purpose to be achieved by the legislation. See Tampa-Hillsborough County Expressway Auth. v. K.E. Morris Alignment Serv., Inc., 444 So.2d 926, 929 (Fla.1983). Sovereign immunity flows from public policy considerations that are centered upon protection of the public treasury from inflated depletions and, secondly, principles relating to the administration of government functions in an orderly fashion. Our legislature has determined and declared the public policy of this state in favor of permitting injured citizens to recover damages over the sovereign interest of possessing absolute immunity. The rigidity of the dissenting view does not accommodate this notion, because it expresses the issue from the perspective that this decision is creating the waiver, while I view this decision as interpreting application of the waiver of immunity already existing.
I also conclude that the dissents' absolutist view, in which Florida's statutory waiver of sovereign immunity would require unwavering compliance in isolation and a vacuum without exception, is contrary to at least Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9 (Fla. 1965), in which this Court has previously addressed precisely equitable concepts in the face of strict compliance arguments with regard to statutorily required "notice" in connection with claims against a governmental entity, concluding:
The sum of the holdings in recent years has been that when responsible agents or officials of a city have actual knowledge of the occurrence which causes injury and they pursue an investigation which reveals substantially the same information that the required notice would provide, and they thereafter follow a course of action which would reasonably lead a claimant to conclude that formal notice would be unnecessary, then the filing of such notice may be said to be waived. If the claimant, as a result of such municipal conduct, in good faith fails to act, or acts thereon to his disadvantage, then an estoppel against the requirement of notice may be said to arise.

*1103 Id. at 12-13 (emphasis supplied). Clearly, where a government, or a subdivision thereof, acts in a fashion which fulfills the general requirements of equitable estoppel, the equitable defense is available to claimants against the governmental entity.[15] This Court has, most assuredly, specifically held that the doctrine of equitable estoppel is available as a shield to defeat a defense based on strict compliance with statutory provisions related to the manner in which claims may be prosecuted against a governmental entity. See, e.g., Rabinowitz, 178 So.2d 9.
Application of well-established and recognized equitable principles existing in the common law when circumstances such as those presented here exist merely operates to implement the stated public policy of this State, not create a waiver, and does not adversely impact the limitations upon the amount of damages that may be recovered, which is now, with a legislatively created waiver, the focal point of the sovereign's primary concern. See Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1019 (Fla.1979) (recognizing that in organized society, basic governmental policy decisions must be unhampered by the threat of depletion of the public treasury through tort liability); Circuit Court of Twelfth Judicial Circuit v. Dep't of Natural Res., 339 So.2d 1113, 1116 (Fla.1976) (deeming protection of the state treasury the primary concern expressed in decisions applying the sovereign immunity doctrine); see also Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla.1985).
Additionally, I must also respectfully disagree with an analysis and conclusion that we may only look to the Legislature for guidance here.[16] While the statutes waiving the state's sovereign immunity and limiting the time allowed for filing actions are clearly within the purview of the legislative body and must be strictly construed by courts, common law doctrines such as equitable estoppel, fraudulent concealment, and others remain in effect and fully operative unless the statute specifically states otherwise. See State v. Ashley, 701 So.2d 338, 341 (Fla. 1997) ("Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, *1104 the statute will not be held to have changed the common law.") (citing Thornber v. City of Fort Walton Beach, 568 So.2d 914 (Fla.1990)). The immunity-waiving statute, the statute of limitations, and the doctrines of equitable estoppel, fraudulent concealment, and other equitable concepts all work in concert here. The dissenting opinion of Justice Wells correctly states a fundamental principle: the "sovereign cannot be sued in tort except to the extent it waives by statutory law its common law sovereign immunity." Dissenting op. at 1106. Because, however, section 768.28 specifies that the State waives its immunity "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state," nothing prevents those injured and having matters concealed as occurred here from employing the standard equitable principles available to all litigants in actions filed against the state. There is not one word in the statute which provides to the contrary. This Court is not creating a waiver; the Legislature has already done so. We are discussing time limitations-not the creation of a "waiver."
Additionally, since neither section 768.28 nor section 95.11 of the Florida Statutes abrogates these equitable doctrines, I conclude they certainly remain viable and applicable in Florida and in the instant case. Unless and until the Legislature expressly revokes the application of equitable principles, they are and should be available as viable shields against the assertion that a statute of limitations precludes a party from pursuing a cause of action under circumstances such as those alleged here, which are certainly repugnant to any sense of justice or decency. In my view, the application of the waiver of sovereign immunity on behalf of the State, as urged by the dissents, does not require this Court to ignore fundamental equitable principles available to every litigant in Florida. The dissents' exclusive attention in this case is to the broad concept of the creation of a waiver of immunity generally, when the attention should focus on a recognition that immunity has unquestionably been waived, but the State is simply attempting to rely upon an internal limitation such as a notice limitation which we have already held to be subject to equitable considerations.
Finally, I cannot find North American Co. v. Green, 120 So.2d 603 (Fla.1960), State Department of Revenue v. Anderson, 403 So.2d 397 (Fla.1981), and Greenhut Construction Co. v. Henry A. Knott Inc., 247 So.2d 517 (Fla. 1st DCA 1971), relating to the principle that "equitable estoppel can effectively be applied against the state only in rare and exceptional circumstances," applicable here. My reading of these cases reveals that all are distinguishable and totally inapposite to the action and facts presently before this Court.
While each of these opinions certainly contains a discussion of the doctrine of equitable estoppel, as well as language which declares that the State may be estopped only in rare situations, the holdings of these cases must be considered in the context of the facts before each court. Upon examination of the three decisions, I conclude that none of them address circumstances even remotely similar to the facts presented in the instant cause of action, nor are they controlling here. While they address the applicability of the doctrine of estoppel in general terms, I read these cases to resolve only the scenario in which a private party attempts to bind the state to a certain position or representation made by a state actor at a time preceding a particular dispute.
In North American, the appellant contended that the Comptroller of Florida was "estopped to collect the subject tax because of his earlier administrative decision *1105 to rely upon an opinion of the Attorney General to the effect that the tax was not collectible." 120 So.2d at 610. Likewise, in Anderson, the respondents attempted to hold the state to its previous "long-standing practice of allowing late registration as a dealer to relate back to the time of a sale in order to demonstrate an exemption." 403 So.2d at 400. Finally, in Greenhut Construction, the court dismissed the appellant's attempt to estop the Florida Department of General Services from asserting its disqualification as a bidder for a state construction contract based upon "the understanding the latter received from the chief of the bureau of construction." 247 So.2d at 523. In my view, because these cases address only arms-length transactions, as opposed to the factual situation in which the State has assumed a position of full responsibility for the well-being of a child through state action, the expansive language contained in these opinions which deals with estoppel does not apply to the instant case. I find no Florida authority which rejects or prohibits application of equitable concepts as a shield under circumstances which involve the State assuming a special protective relationship toward a child which has placed the State alone in an authoritative position to protect a child. I believe that equitable estoppel has been applied by this Court in an analogous situation in Rabinowitz (which involved a tort action) to preclude a governmental entity from relying on an internal limitation (notice) within a statutory framework of permitting actions against a governmental entity.
I submit that the cases which affirmatively attempt to use the doctrine of estoppel to bind the State to past policy articulations or remarksa different scenario than that now before this Courtare not controlling. Here, S.A.P. does not attempt to affirmatively bind the State to prior representations; she simply seeks to use equitable estoppel as a shield to prevent HRS from profiting from its alleged breach of duty and concomitant concealment of evidence. Because the facts of the instant case and the decisions cited in opposition to this result vary so significantly, in my view it is clear that they have no bearing whatsoever on the instant action. The facts which would support application of equitable concepts have already been set forth on the face of the complaint, and nothing new is being injected into this proceeding.
With the Legislature having so clearly waived sovereign immunity and established that the state "shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances," and the state having affirmatively assumed a special relationship to protect this child, application of equitable estoppel to avoid the defense of time limitations is not only proper here, I submit that it is the classic case in which such principle finds the very reason for its existence.
ANSTEAD, C.J., and PARIENTE, J., concur.
WELLS, J., dissenting.
I dissent.
First, the majority opinion does not answer the question that the district court certified to this Court. That question is:
CAN THE DOCTRINE OF FRAUDULENT CONCEALMENT APPLY TO TOLL THE STATUTE OF LIMITATIONS IN A NEGLIGENCE ACTION?
S.A.P. v. Dep't of Health & Rehabilitative Servs., No. 95-00252-CA at 2 (Fla. 1st DCA order filed Dec. 15, 1999). Second, the majority's opinion does not decide any of the issues which were decided by the district court. The district court held that: (1) fraudulent concealment tolled the statute *1106 of limitations as to a claim against a State agency brought under section 768.28, Florida Statutes (1993); (2) this action should be allowed to proceed because of the allegations that during S.A.P.'s minority "there was no one acting on her behalf, no friend or guardian, who could have filed suit on her behalf; and (3) section 95.051(1)(h), Florida Statutes (1993), is not applicable to S.A.P.'s case. S.A.P. v. State Dep't of Health & Rehabilitative Servs., 704 So.2d 583, 585-87 (Fla. 1st DCA 1997).
If the majority were to answer the certified question and decide the issues that were decided by the district court, contrary to the majority's conclusion, the result would have to be adverse to S.A.P. A plain application of the applicable statutes, this Court's precedent, and the doctrine of sovereign immunity dictate that the question certified be answered NO and that the district court's decision be quashed.
In direct answer to the question, which is whether fraudulent concealment tolls the statute of limitations in a negligence action, the answer is dictated by the following statute:
No disability or other reason shall toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law.
§ 95.051(2), Fla. Stat (1993) (emphasis added). This statute is expressly very broad, applying to "any statute of limitations." Id. Because fraudulent concealment is not one of the exceptions listed in section 95.051(2), this provision alone requires that the certified question be answered in the negative. This Court's precedent is that courts will not write exceptions into statutes when the Legislature has not. See Federal Ins. Co. v. Southwest Florida Ret. Ctr., Inc., 707 So.2d 1119, 1121 (Fla.1998).
The fact that this negligence action was brought against a State agency provides an additional basis as to why the certified question has to be answered NO, and the district court's decision should be quashed. The Florida Constitution states in article X, section 13:
Suits against the state.Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.
Section 768.28(1), Florida Statutes (1993), implemented this constitutional provision, stating in its first sentence:
In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act.

(Emphasis added.) Section 768.28(12)[17] expressly specified:

Every claim against the state or one of its agencies or subdivisions for damages for a negligent or wrongful act or omission pursuant to this section shall be forever barred unless the civil action is commenced by filing a complaint in the court of appropriate jurisdiction within 4 years after such claim accrues....
(Emphasis added.) The history of our common law, clearly predating Florida becoming a state,[18] is that the State as a sovereign cannot be sued in tort except to the extent it waives by statutory law its common law sovereign immunity. This Court has repeatedly made this clear. Obviously, *1107 the statutes quoted above represent this statutory waiver. In State ex rel. Florida Dry Cleaning & Laundry Board v. Atkinson, 136 Fla. 528, 188 So. 834, 838 (1938), this Court held:
[N]o suit may be maintained against [a state instrumentality] ... except by consent of the State, which consent may only be effectuated by legislative Act. Such consent can be extended to operate no further than the limitation, if any, which may be prescribed by the legislature in its grant of consent. With the wisdom or policy of a legislative Act limiting the scope of the State's consent to be sued, the courts have no voice.

(Emphasis added.) Moreover, this Court has made equally clear that statutes waiving sovereign immunity are to be strictly construed. In Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla. 1958), a case preceding section 768.28, this Court set out the principle applicable to the earlier constitutional provision pertaining to sovereign immunity. Writing for the Court, Justice Thornal said:
Article III, Section 22, Florida Constitution, F.S.A., authorizes the Legislature to provide by general law for the bringing of a suit against the State. This, of course, applies in equal measure to all state agencies. Inasmuch as immunity of the state and its agencies is an aspect of sovereignty, the courts have consistently held that statutes purporting to waive the sovereign immunity must be clear and unequivocal. Waiver will not be reached as a product of inference or implication. The so-called `waiver of immunity statutes' are to be strictly construed. This is so for the obvious reason that the immunity of the sovereign is a part of the public policy of the state. It is enforced as a protection of the public against profligate encroachments on the public treasury.

Id. at 424 (emphasis added).
Our adherence to strict application of the waiver of sovereign immunity on behalf of the State is in accord with the federal courts' adherence to strict construction in respect to the waiver of sovereign immunity under the Federal Tort Claims Act (FTCA).[19] In Allgeier v. United States, 909 F.2d 869, 873 (6th Cir. 1990), the court stated:
[S]uch considerations are insufficient to override our duty to construe strictly any waiver by the United States of its sovereign immunity. See United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ("we should not take it upon ourselves to extend the waiver beyond that which Congress intended"). On the basis of this well-established principle, courts have declined to extend the limited waiver period for tort claims in [28 U.S.C.] section 2401(b) in interpreting the language of that statute, see, e.g., Kubrick; Vernell [ex rel. Vernell v. U.S. Postal Service], 819 F.2d [108] at 111-12 [2nd Cir.1975], and also in interpreting [Federal Rule of Civil Procedure] 15(c).
In Mann v. United States, 399 F.2d 672, 673 (9th Cir. 1968), the court said:
The Federal Tort Claims Act provides, in part, as follows: "A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues...." 28 U.S.C. § 2401(b). Institution of suit within the two-year period is a jurisdictional requirement. Powers v. United States, 390 F.2d 602 (9th Cir.1968); Humphreys v. United States, 272 F.2d 411, 412 (9th Cir.1959). The time limitation *1108 is not tolled during a claimant's minority. Brown v. United States, 353 F.2d 578 (9th Cir.1965); Pittman v. United States, 341 F.2d 739 (9th Cir.), cert. denied, 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965).
Mann argues that the Government may be prevented from taking advantage of this defense in "a proper case." He points to Osbourne v. United States, 164 F.2d 767 (2d Cir.1947), wherein the Government was not allowed the limitations defense because the plaintiff, a seaman proceeding under the Jones Act, had been denied access to the courts by reason of his imprisonment by the enemy during time of war. Specifically, Mann relies upon his status as an Indian, alleging that he was a ward of the Government and, as such, was "entitled to the care and protection due from a guardian to his ward."
Assuming, arguendo, the validity of the Osbourne decision, which was clearly limited to the wartime situation, we are nevertheless convinced that Congress has left no room for an exception to be made in the present case. Although exceptions to the applicability of the limitations period might occasionally be desirable, we are not free to enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit. See United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The limitations period established by Congress "must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).
(Emphasis added.)
Following these teachings in respect to both the Florida and the federal waivers of sovereign immunity leads to the inescapable conclusion that the section 768.28(12) limitation of four years to pursue a claim is not, as the majority labels it, a "conventional" statute of limitations. This limitations period is the extent of time that the Florida Legislature has determined that sovereign immunity is waived. The plain, unequivocal language that "every claim" must be filed within four years of accrual leaves no room for construction or deflection by the courts. § 768.28(12), Fla. Stat. (emphasis added). To hold that this limitation on the waiver of immunity may be tolled or deflected by equitable estoppel fails to account for the fact that this limitations period is an integral part of the waiver of sovereign immunity and ignores this plain, unequivocal statute. Moreover, this holding writes out of section 768.28(1) the additional mandate that sovereign immunity is waived "only to the extent specified in this act."
I do not agree that the time limitation provision in section 768.28(13), Florida Statutes, is in any way affected by the statement in section 768.28(5), which states, "The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances." Rather, subdivision (5) is intended to make clear the types of actions which may be brought against the State. But every such action must be within the requirement of subdivision (13) because that provision says "every claim" is otherwise barred. The waiver of sovereign immunity is solely a prerogative of the legislative branch of government. Because this waiver is solely a prerogative of the legislative branch and not the judicial branch, I believe the Court is without authority to exercise judicial equity powers to extend the waiver of sovereign immunity beyond that which the Legislature has expressly granted.
Even if equitable estoppel was a doctrine which could be used to extend the *1109 Legislature's waiver of sovereign immunity, that doctrine has no bearing here. Morsani is totally distinguishable on its facts in that it applied equitable estoppel to circumstances where the defendant made inducements to the plaintiff to forbear the bringing of the action that was later claimed by the defendant to be barred. That is the appropriate context for applying the doctrine of equitable estoppel. I do agree with the majority's statement that the doctrines of tolling and equitable estoppel "are as different as apples and oranges." Majority op. at 1096. In fact, the district court decided this case on the basis of tolling and did not refer to the doctrine of equitable estoppel, nor does the certified question refer to equitable tolling.
I note additionally that the law of Florida generally has been that equitable estoppel can effectively be applied against the State only in rare and exceptional circumstances. See North Am. Co. v. Green, 120 So.2d 603, 610 (Fla.1959) ("The instances are rare indeed when the doctrine of equitable estoppel can effectively be applied against state action."); see also State Dep't of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981). I know of no decision out of this Court involving a tort claim that has applied equitable estoppel against the State. The rare and exceptional circumstances in which equitable estoppel has been allowed are instances in which the State has made affirmative representations relied upon by parties in contractual or taxation situations. Equitable estoppel can never be used against the State when the claimant alleges unauthorized acts by State officers, as was alleged in the instant case. The First District Court of Appeal clearly stated these principles in Greenhut Construction Co. v. Henry A. Knott, Inc., 247 So.2d 517, 524 (Fla. 1st DCA 1971):
The law of this state generally recognizes the proposition that although the sovereign may under certain circumstances be estopped, such circumstances must be exceptional and must include some positive act on the part of some officer of the state upon which the aggrieved party had a right to rely and did rely to its detriment. Under no circumstances may the state be estopped by the unauthorized acts or representations of its officers.

(Emphasis added.)
Because I conclude that S.A.P. cannot overcome the four-year limitation in section 768.28(12), on either the basis of tolling or equitable estoppel, I move on to the second holding of the district court below: that S.A.P.'s action can proceed despite the four-year limitation because of her allegations that no one was acting on her behalf during her minority. See S.A.P., 704 So.2d at 585. Again, the district court's decision on this issue must be quashed because it is in conflict with sections 95.051(2) and 768.28(12) and the long-standing precedent of this Court. First, section 95.051(2) specifically prohibits tolling for any statute of limitations except as specified, and the allegations here do not come within the specified exceptions. Second, even if the first reason was not itself dispositive, what I have previously stated concerning the waiver of sovereign immunity also applies to this issue. The Legislature did not waive sovereign immunity for longer than four years even under the alleged circumstances involving S.A.P.
Third, this Court held in Slaughter v. Tyler, 126 Fla. 515, 171 So. 320 (1936), overruled in part on other grounds, Manning v. Serrano, 97 So.2d 688 (Fla. 1957), that "[t]here is no statute in force in this state suspending the statute of limitations on personal actions in account of the minority of the claimant and none has existed since 1872." Id. at 323. The district court correctly recognized in its third holding that no such statute was passed until 1993, *1110 and therefore section 95.051(1)(h) has no applicability to S.A.P.'s case. See S.A.P., 704 So.2d at 587. Finally, in Department of Transportation v. Soldovere, 519 So.2d 616, 617 (Fla.1988), this Court held:
A cause of action for the negligence of another occurs at the time the injury is first inflicted. See Seaboard Air Line Railroad Co. v. Ford, 92 So.2d 160 (Fla. 1956) 35 Fla. Jur.2d Limitations and Laches § 48 (1982). This rule applies whether the cause of action is against a private party or the state.

(Emphasis added.) The operative complaint in this case alleges that S.A.P.'s injuries were known "on or about October 20, 1979." The express language of section 768.28(12) states unequivocally: "Every claim against the state ... shall be forever barred unless the civil action is commenced ... within four years after such claim accrues." (Emphasis added.) Thus, despite S.A.P.'s allegations that no one was acting on her behalf during her minority, this claim is barred because by the allegations of the complaint the cause of action accrued in October 20,1979.
S.A.P. presents a sympathetic circumstance, particularly in light of present news reports concerning the State's agency caring for children. However, since the waiver of sovereign immunity is a power conferred by Florida's Constitution upon the legislative branch, it is my belief that it is the Legislature which must act if claims arising so long ago are to be compensated by this State. S.A.P. does have the alternative of seeking a claims bill before the Legislature. See, e.g., Gamble v. Wells, 450 So.2d 850, 852 (Fla. 1984). It should be the Legislature, as the constitutional guardian of the State treasury, which makes the decision on a claim that accrued after the period of time that the Legislature empowered Florida courts to decide claims against the State by its waiver of sovereign immunity.
HARDING, Senior Justice, concurs.
HARDING, Senior Justice, dissenting.
I concur with Justice Wells' dissent. The majority does not answer the question that the district court certified to this court. Moreover, I would not extend the waiver of sovereign immunity beyond that which the Legislature has expressly granted.
In addition, the respondent never raised the equitable estoppel argument below and, in effect, is impermissibly raising a new argument, in the nature of an affirmative defense, for the first time before this court on appeal.[20]See Fla. R. Civ. P. 1.100(a) (stating when an answer contains an affirmative defense, the opposing party "shall" file a reply containing any avoidance of the defense); Fla. R. Civ. P. 1.110(d) (requiring affirmative defenses, including "estoppel" to be pled). All defenses not raised by motion or responsive pleading are waived and, therefore, respondent's equitable estoppel claim has not been properly preserved. See Fla. R. Civ. P. 1.140(h) (stating all defenses not raised by motion or responsive pleading are waived).[21]
Furthermore, neither the trial court nor the district court has ever ruled upon the equitable estoppel issue and, therefore, this Court is also without jurisdiction to answer the question raised by the majority. In this case, the district court certified the following question:

*1111 CAN THE DOCTRINE OF FRAUDULENT CONCEALMENT APPLY TO TOLL THE STATUTE OF LIMITATIONS IN A NEGLIGENCE ACTION?
Without expressly rewording the certified question, however, this Court reframes the issue from pertaining specifically to "fraudulent concealment" to that pertaining specifically to equitable estoppelan issue never raised in any of the pleadings, nor ever addressed by either the trial or the district court.
This is a court of limited jurisdiction. In Pirelli Armstrong Tire Corp. v. Jensen, 777 So.2d 973 (Fla.2001), we explained that our jurisdiction in certified question cases was limited to "any decision of a district court of appeal that passes upon a question certified by it to be of great public importance." Id. at 974 (quoting art. V, § 3(b)(4), Fla. Const.) (emphasis added). Because neither the trial court nor the district court has ever passed upon the question of whether application of the doctrine of equitable estoppel extends the waiver of sovereign immunity beyond that which the Legislature has expressly granted, I would find that, under the reasoning expressed by this Court in Jensen, this Court is without jurisdiction to answer the question raised and addressed by the majority.
NOTES
[1] Section 768.28(12) subsequently was renumbered section 768.28(13). See § 768.28(13), Fla. Stat. (1995).
[2] See, e.g., Ralph v. City of Daytona Beach, 471 So.2d 1, 2 (Fla.1983) ("For the purposes of a motion to dismiss ... allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff.").
[3] See, e.g., Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 583 (Fla.2000) ("A trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review.").
[4] See Glassman v. Glassman, 309 N.Y. 436, 131 N.E.2d 721 (1956).
[5] See generally § 2.01, Fla. Stat. (1995).
[6] See Public Health Trust v. Menendez, 584 So.2d 567, 569 (Fla. 1991) ("The fact that [section 768.28(13)] provides a statute of limitation but not a statute of repose thus means that no repose period was intended."); Beard v. Hambrick, 396 So.2d 708, 712 (Fla. 1981) (holding that "the four-year statute of limitations" contained in current section 768.28(13) applies to all section 768.28 actions); see generally Kush v. Lloyd, 616 So.2d 415, 418 (Fla. 1992) ("A statute of limitation begins to run upon the accrual of a cause of action.... On the other hand, a statute of repose, which is usually longer in length, runs from the date of a discrete act on the part of the defendant without regard to when the cause of action accrued.")
[7] Section 95.051 sets forth an exclusive list of conditions that can "toll" the running of the statute of limitations; the section states that no other condition can toll the statute of limitations. The list does not mention equitable estoppel. See § 95.051, Fla. Stat. (1995).
[8] See § 95.11, Fla. Stat. (1995).
[9] See Major League Baseball, 790 So.2d at 1078.
[10] See, e.g., Barnett Bank of Palm Beach County v. Estate of Read, 493 So.2d 447, 449 (Fla. 1986) ("[J]ustice requires us to hold that section 733.702 is a statute of limitations. Valid grounds, such as estoppel or fraud, may exist that would and should excuse untimely claims."); Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9, 13 (Fla.1965)" ("If the claimant, as a result of such municipal conduct, in good faith fails to act, or acts thereon to his disadvantage, then an estoppel against the requirement of the notice may be said to arise.").
[11] See, e.g., Baptist Hosp. of Miami, Inc. v. Carter, 658 So.2d 560, 563 (Fla. 3rd DCA 1995) ("It is well settled ... as a general rule... that fraud or misrepresentation which misleads a claimant into a justified failure to assert his rights bars reliance on a statute of limitations."); Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992) ("A party will be estopped from asserting the statute of limitations defense to an admittedly untimely action where his conduct has induced another into forbearing suit within the applicable limitations period."); Jaszay v. H.B. Corp., 598 So.2d 112, 113 (Fla. 4th DCA 1992) ("The appellee is estopped from asserting the limitations defense because it stipulated to a sixty-day extension of the pre-suit screening period...."); Glantzis v. State Auto. Mut. Ins. Co., 573 So.2d 1049, 1050 (Fla. 4th DCA 1991) ("[W]e believe the evidence is such that the doctrine of equitable estoppel applies preventing State Auto from resorting to the statute of limitations as a defense."); Olenek v. Bennett, 537 So.2d 160, 161 (Fla. 5th DCA 1989) ("Fairness and equity dictate that the estate is estopped from raising the statute [of limitations] as a defense."); Martin v. Monroe County, 518 So.2d 934, 935 (Fla. 3rd DCA 1987) ("We hold that when the [department] acknowledges that within the statute of limitations, an accident report of a claim was filed ... it is thereafter estopped after the expiration of the statute of limitations to deny receipt of the claim."); City of Brooksville v. Hernando County, 424 So.2d 846, 848 (Fla. 5th DCA 1982) ("While continuing negotiations regarding settlement do not `toll' the running of a statute of limitation, such negotiations, if infected with an element of deception, may create an estoppel. This is true even subsequent to the 1975 enactment of subsection (2) of section 95.051 which states that `no disability or other reason shall toll the running of any statute of limitations except those specified in this section.' " (footnote and citation omitted)); Cape Cave Corp. v. Lowe, 411 So.2d 887, 889 (Fla. 2nd DCA 1982) ("[A] defendant may by its actions become estopped from claiming the benefit of a statute of limitations."); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337, 1339 (Fla. 3rd DCA 1979) ("There can be no doubt that one may in fact be estopped from claiming the benefit of the statute of limitations."); J.A. Cantor Assoc. v. Brenner, 363 So.2d 204, 205 (Fla. 3rd DCA 1978) ("Concerning the statute of limitations, the record shows evidence which, if believed by the jury, would support a jury finding that ... the appellant made fraudulent representations... so that the appellee was misled....").
[12] See, e.g., Cange v. Stotler & Co., 913 F.2d 1204, 1209 (7th Cir.1990); Cook v. Deltona Corp., 753 F.2d 1552, 1562-63 (11th Cir. 1985); Darms v. McCulloch Oil Corp., 720 F.2d 490, 494 (8th Cir. 1983); Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1043 n. 7 (10th Cir.1980).
[13] See generally Soud v. Hike, 56 So.2d 462, 466 (Fla. 1952) ("By judicial construction [the common law] also includes the substantive principles of equity as well as those of law.").
[14] The Florida courts have been called upon many times to interpret the scope and applicability of the state's waiver of sovereign immunity. See, e.g., Beard v. Hambrick, 396 So.2d 708 (Fla. 1981); Hill v. Dep't of Corrections, 513 So.2d 129 (Fla. 1987); Triannon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985); McClelland v. Cool, 547 So.2d 975, 976 (Fla. 2d DCA 1989). Today, this Court continues this fulfillment of its constitutional duties by analyzing the interaction between the statutory waiver of immunity and the doctrine of equitable estoppel.
[15] The United States Supreme Court has deemed the doctrine of equitable estoppel applicable to the federal government on a number of occasions, provided that the government engaged in affirmative misconduct. See Heckler v. Cmty. Health Servs. of Crawford County, 467 U.S. 51, 60-61, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); United States v. Pennsylvania Indus. Chem. Corp., 411 U.S. 655, 670-75, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); see also Tefel v. Reno, 180 F.3d 1286, 1302-03 (11th Cir. 1999); Clark v. United States, 68 F.Supp.2d 1333, 1350-51 (N.D.Ga.1999). Additionally, various states have applied the doctrine of equitable estoppel to prevent governmental entities from asserting time bar or lack of notice as affirmative defenses. See, e.g., Pritchard v. State, 163 Ariz. 427, 788 P.2d 1178, 1183 (1990); Ortega v. Pajaro Valley Unified School Dist., 64 Cal.App.4th 1023, 75 Cal.Rptr.2d 777, 789 (1998); Woodard v. City of Lincoln, 256 Neb. 61, 588 N.W.2d 831, 836 (1999) ("We find no reason to place the tort claims acts outside the reach of the doctrine of equitable estoppel."); Brown v. City of New-York, 264 A.D.2d 493, 694 N.Y.S.2d 461, 462 (1999) (equitably estopping the City from asserting the limitations period due to misconduct); Mercer v. State, 48 Wash.App. 496, 739 P.2d 703, 706 (1987).
[16] In my view, Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla. 1958), is not applicable to the issues addressed by this Court today. While this decision certainly details long-standing principles with regard to the proper construction of statutes waiving the sovereign immunity of government entities, this case only addresses the situation in which "the State Legislature has not waived [an agency's sovereign] immunity" at all. Id. at 423.
[17] This subdivision was subsequently renumbered to be section 768.28(13). See § 768.28(13), Fla. Stat. (1995).
[18] The Florida Legislature's adoption of the common law as it existed prior to Florida's statehood is codified in section 2.01, Florida Statutes (1993).
[19] See 28 U.S.C. §§ 2671-2680 (2000) (establishing legal mechanism for compensating persons injured by negligent or wrongful acts of federal employees committed within scope of their employment).
[20] The first time the equitable estoppel issue was raised is in the respondent's answer brief to this Court.
[21] Petitioner's argument that the respondent's claim is barred under the doctrine of sovereign immunity, though not addressed in the lower court's decision, was properly raised in petitioner's second amended motion to dismiss the respondent's amended complaint. See Record on Appeal at 127.